CAROL ROSE ET AL. *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(14256)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BERDON, Js.

Argued December 6, 1991—decision released February 18, 1992

*Martin A. Gould,* with whom was *Alfred J. Garofolo,* for the appellants (plaintiffs).

*Constance L. Chambers,* assistant general counsel, for the appellee (named defendant).

PETERS, C. J. The principal issue in this appeal is the relationship between the interest in the open conduct of government codified in General Statutes § 1-21[1] of the Freedom of Information Act (FOIA) and the interest in confidentiality for "records of teacher performance and evaluation" expressed by the legislature in General Statutes § 10-151c.[2] The underlying contro-

---

[1] General Statutes § 1-21 provides in pertinent part: "(a) The meetings of all public agencies, except executive sessions as defined in subsection (e) of section 1-18a, shall be open to the public. The votes of each member of any such public agency upon any issue before such public agency shall be reduced to writing and made available for public inspection within forty-eight hours and shall also be recorded in the minutes of the session at which taken, which minutes shall be available for public inspection within seven days of the session to which they refer."

The Freedom of Information Act in its entirety is found in General Statutes §§ 1-15, 1-18a, 1-19 through 1-19b, 1-20a through 1-21a, and 1-21c through 1-21k.

[2] General Statutes § 10-151c provides in pertinent part: "Any records maintained or kept on file by any local or regional board of education which are records of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-19, provided that any teacher may consent in writing to the release of his records by a board of education."

versy between the plaintiffs, Carol Rose and Vera Rozarie, and the defendant freedom of information commission (FOIC) concerns the validity of an FOIC order to the defendant board of education of the town of Stratford (board) to disclose the substance of the board's action approving a recommendation to take disciplinary action against the plaintiffs. The Superior Court dismissed the plaintiffs' appeal of the FOIC's order for want of subject matter jurisdiction after concluding that the plaintiffs were not "parties aggrieved" by a decision of the FOIC within the meaning of General Statutes § 1-21i (d)[3] and therefore lacked standing to appeal. After the plaintiffs appealed the judgment of dismissal to the Appellate Court, we transferred the appeal to this court pursuant to Practice Book § 4023. We disagree with the trial court's procedural ruling, but conclude that, on the merits, the plaintiffs' appeal was properly dismissed.

The material facts are undisputed. On April 28, 1989, teachers and administrators at the Flood Intermediate School in Stratford staged a mock arrest of a teacher as a prelude to teaching students about the Scopes Monkey Trial. The students were led to believe that the arrest was genuine and were released from school, over a weekend, unaware of the true circumstances of the arrest. The mock arrest upset both students and parents.

In response to this incident, the Stratford superintendent of schools recommended to the board that it take disciplinary action against the teachers and administrators involved in the incident, including the plaintiffs, who were the principal and assistant principal of the school. By notice dated May 5, 1989, the board called a special meeting with the following agenda:

[3] General Statutes § 1-21i (d) provides in pertinent part: "Any *party* aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183." (Emphasis added.)

"Review of incident at Flood Intermediate School on and after April 28, 1989, discussion of appropriate action concerning the incident, and action to resolve the issue relating to the incident." At the special meeting, on May 15, 1989, the board voted to enter executive session[4] to discuss the incident and the recommended disciplinary action. Following its discussion in executive session, the board reconvened in public and voted by a four to three margin to "accept the recommendations of the Superintendent of Schools concerning disciplinary action to be taken to remedy the incident which occurred at Flood Intermediate School." Before adjourning the meeting, the board chairperson announced that it would be "inappropriate" to disclose the specific action voted on because the discussion had taken place in executive session.

Stephen J. Winters, Constance K. Davis, and the Bridgeport Post-Telegram (complainants) filed a complaint with the FOIC alleging that the board's failure to specify the nature of the disciplinary action that it was approving had violated the open meeting provisions of § 1-21. On October 26, 1989, the FOIC conducted

[4] General Statutes § 1-18a (e) defines "executive session" as a "meeting of a public agency at which the public is excluded for one of the following purposes: (1) Discussion concerning the appointment, employment, performance, evaluation, health or dismissal of a public officer or employee, provided that such individual may require that discussion be held at an open meeting; (2) strategy and negotiations with respect to pending claims and litigation to which the public agency or a member thereof, because of his conduct as a member of such agency, is a party until such litigation or claim has been finally adjudicated or otherwise settled; (3) matters concerning security strategy or the deployment of security personnel, or devices affecting public security; (4) discussion of the selection of a site or the lease, sale or purchase of real estate by a political subdivision of the state when publicity regarding such site, lease, sale, purchase or construction would cause a likelihood of increased price until such time as all of the property has been acquired or all proceedings or transactions concerning same have been terminated or abandoned; and (5) discussion of any matter which would result in the disclosure of public records or the information contained therein described in subsection (b) of section 1-19."

a full hearing on the complaint. The board responded that §§ 1-18a (e),[5] 1-19 (b) (2),[6] and 10-151c authorized the manner in which it had proceeded at the public meeting. The plaintiffs moved to intervene as parties before the FOIC pursuant to General Statutes § 1-21i (b).[7] The FOIC denied the plaintiffs party status, but allowed them to participate in the hearing as intervenors pursuant to § 1-21j-28 of the Regulations of Connecticut State Agencies.[8]

The FOIC concluded: (1) that §§ 1-21 (a) and 1-18 (e) (1) "require that votes of agencies with respect to personnel matters be taken in public"; (2) that §§ 1-19 (b) (2) and 10-151c "do not authorize or permit the non-disclosure of the substance of a vote of a board of education concerning the discipline of school teachers or administrators"; and (3) that the board had "failed to comply with the open meeting provisions of § 1-21 (a) . . . when it failed to state in public the substance of the motion upon which it voted at the May 15, 1989 special meeting." It ordered the board to "provide the complainant[s] with a record containing the recommendation for disciplinary action it approved."

[5] See footnote 4, supra.

[6] General Statutes § 1-19 (b) (2) exempts from the purview of the FOIA "personnel or medical files and similar files the disclosure of which would constitute an invasion of privacy."

[7] General Statutes § 1-21i (b) provides in pertinent part: "A public employee whose personnel or medical file or similar file is the subject of an appeal under this subsection may intervene as a party in the proceedings on the matter before the commission."

[8] Section 1-21j-28 (a) of the Regulations of Connecticut State Agencies provides in pertinent part: "At any time prior to the commencement of oral testimony in any hearing on a contested case any person may request that the presiding officer permit that person to participate in the hearing. Any person not a party that is so permitted to participate in the hearing will be identified an intervenor in these regulations and will participate in those portions of the contested case that the presiding officer shall expressly allow." "Intervenor" is defined in § 1-21j-12 (g) of the Regulations of Connecticut State Agencies as "each person admitted by the presiding officer as a participant in a contested case who is not a party."

The plaintiffs appealed the decision of the FOIC to the Superior Court pursuant to § 1-21i (d). They alleged that, procedurally, the FOIC had improperly denied them party status and that, substantively, its order of disclosure had violated § 10-151c.[9] The Superior Court granted the FOIC's motion to dismiss the appeal upon concluding that the plaintiffs were not "parties" within the meaning of § 1-21i (d) of the FOIA and § 1-21j-12 (g) of the FOIC regulations[10] and thus lacked standing to appeal from the FOIC decision. In its memorandum of decision the court also discussed, however, and found unpersuasive, the merits of the plaintiffs' appeal.

The plaintiffs renew in this court the issues that they raised in their administrative appeal to the Superior Court. They maintain that because the substance of the recommended disciplinary action was part of the plaintiffs' "personnel or medical . . . or similar file[s]" within the meaning of § 1-21i (b), the FOIC improperly: (1) denied them party status; and (2) failed to give effect to the protection from disclosure afforded to them by § 10-151c. We agree with the plaintiffs that they had standing to appeal the FOIC order to the Superior Court, but we disagree with their conception of the relationship between §§ 1-21 and 10-151c.

I

We first address the propriety of the trial court's decision on the procedural issue of whether the plaintiffs have standing to challenge the order of the FOIC. Administrative appeals depend upon statutory autho-

[9] The plaintiffs did not pursue on appeal to the Superior Court the claims raised at the FOIC proceeding that the manner in which the motion was voted upon was proper pursuant to General Statutes §§ 1-18a (e) and 1-19 (b) (2).

[10] Section 1-21j-12 (f) of the Regulations of Connecticut State Agencies defines "party" as "each person or agency named or admitted by the commission as a party, or properly seeking and entitled as of right to be admitted as a party."

rization. *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 201, 440 A.2d 286 (1982); *Nader* v. *Alter-matt,* 166 Conn. 43, 53, 347 A.2d 89 (1974). For FOIC orders, such authority is to be found in § 1-21i (d), which provides that "[a]ny *party aggrieved* by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183."[11] (Emphasis added.)

"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has . . . some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 647 (1983) . . . ." (Internal quotation marks omitted.) *Unisys Corporation* v. *Department of Labor,* 220 Conn. 689, 693, 600 A.2d 1019 (1991). " 'Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr,* 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern,* 165 Conn. 190, 192, 332 A.2d 78 (1973). These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of [a] direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a "personal stake in the outcome of the controversy"; *Shaskan* v.

[11] General Statutes § 4-183, which is part of the Uniform Administrative Procedure Act, details the procedures for appealing an agency decision to the Superior Court.

*Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975); *Baker* v. *Carr,* supra, 204; provides the requisite assurance of "concrete adverseness" and diligent advocacy.' " *Board of Pardons* v. *Freedom of Information Commission,* 210 Conn. 646, 648–49, 556 A.2d 1020 (1989), quoting *Maloney* v. *Pac,* 183 Conn. 313, 320–21, 439 A.2d 349 (1981).

## A

The trial court, adhering to the Appellate Court's interpretation of § 1-21i (d) in *Stanchem, Inc.* v. *Freedom of Information Commission,* 13 Conn. App. 315, 536 A.2d 592 (1988), and relying upon the FOIC regulations defining "party," concluded that only one who had been granted party status in the proceedings before the FOIC, or had properly sought and was "entitled as of right to be admitted as a party," has standing to appeal to the Superior Court from an FOIC decision. It determined that the plaintiffs lacked standing because (1) the FOIC had denied them party status, and (2) they had failed to demonstrate that they had been improperly denied party status.

The plaintiffs claim they were entitled to party status because § 1-21i (b), which provides that "[a] public employee whose personnel or medical file or similar file is the subject of an appeal under this subsection may intervene as a party in the proceedings on the matter before the commission," and § 10-151c, which exempts "records of teacher performance and evaluation" from the FOIA, conferred such a right. Although there may be merit to the plaintiffs' contention that the FOIC incorrectly denied them party status, we need not reach that question, because careful examination of § 1-21i (d) discloses that it authorizes an appeal to the Superior Court upon a showing of classical aggrievement.[12]

---

[12] We do not review the plaintiffs' claim on appeal that the FOIC improperly denied them party status. The plaintiffs participated fully in the FOIC

The legislature in § 1-21i (d) permits an appeal by "[a]ny party aggrieved" by a decision of the FOIC. The trial court assumed that, in using this language, the legislature intended to make standing to appeal dependent upon party status in the underlying agency proceeding. Its assumption involves an issue of statutory interpretation, which presents a question of law for this court. *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission*, 219 Conn. 685, 692, 595 A.2d 313 (1991).

" 'The objective of statutory construction is to give effect to the intended purpose of the legislature.' *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1184 (1990). That axiom only applies in full force, however, '[w]here . . . the language of a statute is . . . *absolutely* clear' on its face and where no ambiguity is raised in applying the statute in a particular case. (Emphasis in original.) *Anderson* v. *Ludgin,* 175 Conn. 545, 554, 400 A.2d 712 (1978) . . . ." *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* supra.

Although "[c]ourts are bound to accept the legislative definition of terms in a statute"; *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883 (1961); the legislature has not defined "party" within the FOIA. We recently stated that "[o]rdinar-

proceedings as intervenors. They do not allege that their rights *at the proceeding* were impaired by the denial of party status. Rather, the claim that they were improperly denied party status was added to their complaint only after the trial court raised, sua sponte, the issue of the plaintiffs' status as intervenors. The plaintiffs apparently added the claim in order to circumvent the holding of *Stanchem, Inc.* v. *Freedom of Information Commission,* 13 Conn. App. 315, 536 A.2d 592 (1988). To the extent that *Stanchem, Inc.,* is inconsistent with this case, it is overruled.

ily, the word 'party' has a technical legal meaning, referring 'to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons.' Black's Law Dictionary, citing *Golatte* v. *Mathews,* 394 F. Sup. 1203, 1207 (D.C. Ala. 1975) . . . ." *Lieberman* v. *Reliable Refuse Co.,* 212 Conn. 661, 669, 563 A.2d 1013 (1989). However, "[w]e interpret statutory terms by reading them in context and not in isolation." Id.

We conclude that the trial court's construction of the word "party" in § 1-21i (d), which is in essence the "technical" use of the word described in *Lieberman,* leads to unacceptable results. Construing party status in court as equivalent to party status before the FOIC would vest with the agency's presiding officer, in accordance with its regulations; Regs., Conn. State Agencies § 1-21j-27; the authority to decide not only who could appear before the agency but also who could challenge an adverse decision of the agency. Indeed, at oral argument before this court, counsel for the FOIC conceded that the agency was inclined to limit party status in order to limit the number of appeals it must defend.[13] We are doubtful that the legislature's use of the word "party" in § 1-21i (d) was intended to grant unfettered discretion to the FOIC to decide who can appeal the merits of its decisions. In some circumstances, denial of party status so as to limit appellate review might violate the due process rights of a person aggrieved by an FOIC decision. See *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).

---

[13] Apparently, the FOIC is more liberal in granting intervenor status because, under the FOIC's definition of "party," an intervenor has no right of appeal.

While "party" has an ordinary technical usage, we noted in *Lieberman* that it has a "commonly approved usage" as well. *Lieberman* v. *Reliable Refuse Co.,* supra. Where a word in a statute has more than one possible meaning, and one meaning might lead to practical difficulties or constitutional infirmities, we should consider whether the legislature intended to adopt the other meaning. Black's Law Dictionary defines "party" as "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually" and further notes that " 'party' is not restricted to strict meaning of plaintiff or defendant in a lawsuit." Interpreting "party" in this broad manner avoids any possible encroachment on the due process rights of persons who, although not technically "parties" to the underlying FOIC proceeding, are nevertheless aggrieved by the decision.

"When application of the statute to a particular situation reveals a latent ambiguity in seemingly unambiguous language . . . we turn for guidance to the purpose of the statute and its legislative history to resolve that ambiguity." *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). We particularly look to the history, the purpose, the objective and the underlying policy of the statute. *Anderson* v. *Ludgin,* supra. "These aids to legislative interpretation apply with equal force to amendatory acts which effectuate changes in existing statutes." *Sherry H.* v. *Probate Court,* 177 Conn. 93, 101, 411 A.2d 931 (1979).

The reason for the legislature's reference to "party" in § 1-21i (d) is illuminated by its legislative history. Prior to 1977, the subsection provided: "Any *person* aggrieved by the decision of said commission may appeal therefrom . . . ." (Emphasis added.) General Statutes (Rev. to 1977) § 1-21i (d). In 1977, the legislature, by enacting Public Acts 1977, No. 77-403,

repealed that language and replaced it with the text presently applicable. The amended subsection was identical to its precursor in all respects except for the substitution of the word "party" for "person" in two places.[14] The stated purpose of the proposed amendment to § 1-21i (d) in House Bill No. 8080 was "[t]o correct a deficiency in the present statute and thus allow not only individuals but also state agencies who are aggrieved by a decision to appeal." Presumably, the legislature deemed the change necessary because the word "person" as defined in the FOIA at § 1-18a (c) is limited to a "natural person, partnership, corporation, association or society."[15] The statement of Senator DePiano, the only legislator who spoke on behalf of the bill on the floor of the Senate, directly supports the stated purpose. He informed the Senate that "[t]his bill merely changes one word in the existing statute from person to party which would then allow the attorney general to file appeals on behalf of the state agencies in regard to decisions of the Freedom of Information Commission." 20 S. Proc., Pt. 7, 1977 Sess., p. 2798, remarks of Senator Salvatore C. DePiano. "Although statements made on the floor of the legislature are not controlling on statutory interpretation, we may take judicial notice of those statements,

[14] In addition to changing "person aggrieved" to "party aggrieved," Public Acts 1977, No. 77-403 substituted the word "party" for "person" in the following sentence: "Nothing in this section shall deprive any [person] PARTY of any rights he may have had at common law prior to January 1, 1958."

[15] Section 1-21j-12 (h) of the Regulations of Connecticut State Agencies defines "person" to "include any individual, partnership, corporation, association, *governmental subdivision,* or public or private organization of any character to which these rules of practice may apply where appropriate to the context of the regulations herein set forth." (Emphasis added.) Although the FOIC regulations define the term "person" to include state agencies, the legislature's narrower definition of "person" within the FOIA is controlling. Accordingly, prior to the 1977 amendment, state agencies were not authorized to appeal from FOIA decisions pursuant to General Statutes § 1-21i (d).

which are strong indications of legislative intent. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 195 n.8, 530 A.2d 171 (1987); *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 276, 524 A.2d 621 (1987) . . . ." *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 310–11, 592 A.2d 953 (1991). This legislative history definitively establishes that "party" was inserted into § 1-21i (d) to broaden, and not to limit, access to judicial review.

Prior to its 1977 amendment, § 1-21i (d) required nothing more than a showing of aggrievement as a condition for standing to appeal. " 'An amendatory act is presumed not to change the existing law further than is expressly declared or necessarily implied.' *State* v. *Fahy,* 149 Conn. 577, 582, 183 A.2d 256 [(1962), rev'd, 375 U.S. 85, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963)]." *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 63, 392 A.2d 491 (1978); see also *Grodis* v. *Burns,* 190 Conn. 39, 47 n.5, 459 A.2d 994 (1983); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 21 n.6, 434 A.2d 293 (1980). In light of the unequivocal statement of purpose and legislative history surrounding the amendment, the use of "party" in § 1-21i (d) does not now require party status in an FOIC proceeding as a precondition for standing to appeal the decision.

The FOIC regulation defining "party" appears to be in conflict with the legislature's use of the word. A regulation that conflicts with a statute, however, has no validity. *Austin* v. *Housing Authority,* 143 Conn. 338, 348–49, 122 A.2d 399 (1956); see also *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 363, 417 A.2d 358 (1979); *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 635, 481 A.2d 755 (1984). The term "party" in the FOIC's regulation appropriately defines the commission's rules with respect to who can participate as a

party in an FOIC proceeding. The FOIC's restrictive definition of "party" cannot, however, be used to deny standing to appeal to those whose interests have been injuriously affected by its proceedings.

## B

Accordingly, the plaintiffs are not required, in order to have standing to appeal the FOIC's decision in the present case pursuant to § 1-21i (d), to show that they were actually granted party status or that they were "entitled as of right" to be made parties to the FOIC hearing. They need show only that they have been aggrieved by a decision of the FOIC. See *Board of Pardons* v. *Freedom of Information Commission,* supra, 648–49. "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party . . . must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978); *Nader* v. *Altermatt,* [166 Conn. 43, 51, 347 A.2d 89 (1974)]." (Internal quotation marks omitted.) *Bakelaar* v. *West Haven,* 193 Conn. 59, 65, 475 A.2d 283 (1984).

We conclude that the plaintiffs have satisfied both prongs of this test. "Aggrievement is established if 'there is some possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected.' " *Hall* v. *Planning Commission,* 181 Conn. 442, 445, 435 A.2d 975 (1980); *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953).

The plaintiffs' personal interest follows from their specific factual allegations of aggrievement, which include that they were directly involved in the incident that led to the board's investigation, executive session and vote. The FOIC's own finding establishes that the board had taken action *"with regard to Rose and Ro[z]arie."* (Emphasis added.) The FOIC cannot dispute that the plaintiffs' interest in an order to disclose the substance of a board action taken "with regard to" them satisfies the requirement of a personal and legal interest in the subject matter.

The plaintiffs further alleged that their rights were substantially impaired by the FOIC's order to the board to provide to the complainants "a record containing the recommendation for disciplinary action it approved." The FOIC's order to disclose the substance of that action unquestionably had an injurious effect on the plaintiffs' interest in keeping the substance of the disciplinary action from the public. As such, we conclude that the plaintiffs were aggrieved by the decision of the FOIC and accordingly that their appeal pursuant to § 1-21i (d) was properly before the Superior Court.

II

The disposition of the substantive merits of the plaintiffs' appeal depends upon whether, as the plaintiffs contend, § 10-151c authorized the board, in approving the recommendation of its superintendent, to act upon that recommendation without publicly revealing its content. "The interpretation of statutes presents a question of law. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 139–40, 509 A.2d 1050 (1986)." *Board of Education* v. *Freedom of Information Commission,* 217 Conn. 153, 158, 585 A.2d 82 (1991). Because the statutory construction issues were raised, briefed and argued before the trial court and before this court, and in recognition of the

need for judicial economy; see *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 216 Conn. 627, 639, 583 A.2d 906 (1990); we will decide whether the open meeting provisions of § 1-21 require disclosure of the nature of the disciplinary action taken in this case.

The burden of proving the applicability of an exception to the FOIA rests upon the party claiming it. *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 431, 518 A.2d 49 (1986); *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984). The plaintiffs assert that in executive session the board considered matters involving the performance of the plaintiffs, and that the meeting and the record generated pursuant thereto would reflect matters of teacher performance. Accordingly, they maintain that the record containing the recommendation for disciplinary action, which the FOIC ordered the board to provide to the complainants, is not a "public record" for purposes of the FOIA because § 10-151c exempts such "records of teacher performance and evaluation" from disclosure. They liken disclosure of the substance of the motion to disclosure of letters of reprimand, censure or caution. We disagree.

The board is a public agency within the meaning of § 1-18a (a).[16] Section 1-21 (a) explicitly states that "[t]he votes of *each* member of *any* such public agency upon *any issue* before such public agency shall be reduced to writing and made available for public inspection

---

[16] General Statutes § 1-18a (a) provides in pertinent part: " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions."

. . . ." (Emphasis added.) "Although we have perceived a legislative intention reflected in the Freedom of Information Act 'to balance the public's right to know what its agencies are doing with the governmental and private needs for confidentiality,' we have also recognized that the general rule is disclosure and that exceptions will be narrowly construed. *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328–29, 435 A.2d 353 (1980)." *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 188, 470 A.2d 1209 (1984).

In adopting the FOIA in 1975, the legislature gave voice to a strong legislative policy in favor of the open conduct of government: "The Legislature finds and declares that . . . the people do not yield their sovereignty to the agencies which serve them. That the people in delegating authority do not give their public servants the right to decide what is good for them to know and that it is the intent of this Law that *actions taken by public agencies be taken openly* and their deliberations be conducted openly and that the records of all public agencies be open to the public except in those instances where superior public interest requires confidentiality." (Emphasis added.) 18 H.R. Proc., Pt. 8, 1975 Sess., p. 3911, remarks of Representative Martin B. Burke; see also 18 S. Proc., Pt. 5, 1975 Sess., pp. 2323–24, remarks of Senator Robert L. Julianelle. The purpose of the statutory requirements for records of votes and minutes is thus to guarantee that the actions of government agencies will be taken in public so that the public can monitor the performance of its public officials. "Because of the tremendous increases in governmental agencies and the great impact that their actions have on the individual, it is important that individuals have knowledge of the doings of these bodies. The provisions of § 1-21 accomplish a salutary objective in this regard by requiring specific and full

disclosure of their doings." *Pape* v. *McKinney,* 170 Conn. 588, 600, 368 A.2d 28 (1976) (*Bogdanski, J.,* dissenting).

We are unpersuaded that § 10-151c was intended to prevent the public disclosure of the substance of votes of a public agency that happen to concern matters of personnel, teacher performance or evaluation. In enacting § 10-151c, the legislature was apparently responding to an FOIC decision interpreting the § 1-19 (b) (2) exemption for personnel files[17] as not including an exemption for teacher evaluation files. See 27 H.R. Proc., Pt. 7, 1984 Sess., pp. 2547–48, remarks of Representative Michael Helfgott. We reviewed the enactment of § 10-151c in *Board of Education* v. *Freedom of Information Commission,* 210 Conn. 590, 594, 556 A.2d 592 (1989), and concluded that "the purpose of Public Acts 1984, No. 84-276 was to clarify the earlier legislative intent of § 1-19 (b) (2)." In exempting "records of teacher performance and evaluation," the legislature intended to preserve such files from unrestricted public access, in the same manner as otherwise provided in § 1-19 (b) (2). Nothing in this legislative history suggests that the legislature intended to supersede the voting provisions of § 1-21.

The exemption contained in § 1-19 (b) (2), by its own terms, does not prevent disclosure of the substance of a public agency vote on a motion that concerns a personnel matter. We agree with the trial court that "[w]hile it is quite possible that the vote of the Board to approve the superintendent's recommendation might generate disciplinary actions, such as the issuance of letters of reprimand, suspensions, or terminations, which in turn might produce records which would become part of the plaintiff's personnel files, the vote itself is not such a record. The vote is a record of the

---

[17] See footnote 6, supra.

Board's activity. To hold otherwise would deprive the public of its ability intelligently to assess whether the Board members, elected officials, are doing their work properly."

Although §§ 1-18a (e) and 1-21 (a) authorize public agencies to meet in executive session to *discuss* matters concerning the employment, performance and evaluation of a public employee, such meetings conducted outside of the public eye are reserved for agendas that the legislature has permitted to be conducted in private. Executive sessions cannot be used to shield a public employee from disclosure of the substance of board votes taken as a result of nonpublic discussions. The potential for abuse is simply too great.

In this case, rather than comply with the requirements of § 1-21, the board adopted a formal motion whose contents were purposely withheld from the public. The plaintiffs contend that it was sufficient that the public was aware that a disciplinary action had been recommended by the superintendent and approved by the board. The public, however, had no way of knowing whether the disciplinary action approved by the board was severe or nominal. The board's formal action was too equivocal to satisfy the requirements of the open meeting provisions of the FOIA.

Neither § 10-151c nor § 1-19 (b) (2) warranted the action by the board of education in failing to disclose the specific content of the disciplinary actions recommended by the school superintendent. The FOIC was therefore acting within the scope of its authority in ordering the board to furnish the complainants "with a record containing the recommendation for disciplinary action it approved." " 'The . . . judgment will be affirmed, though based on erroneous grounds, if the same result is required by law.' *A & H Corporation* v. *Bridgeport,* 180 Conn. 453, 443, 430 A.2d 25 (1980);

*Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978)." *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 435, 461, 521 A.2d 1040 (1987). Accordingly, the trial court was correct in dismissing the plaintiffs' administrative appeal on the merits.

The judgment is affirmed.

In this opinion the other justices concurred.