COMMISSIONER OF ADMINISTRATIVE SERVICES *v.* WILLIAM GERACE
(14273)

Foti, Schaller and Spallone, Js.

Argued January 12—decision released April 2, 1996

*Robert A. Nagy*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Denise Mondell*, assistant attorney general, for the appellant (state).

*David M. Poirot*, with whom, on the brief, was *Steven F. Meo*, for the appellee (defendant).

FOTI, J. The plaintiff[1] appeals from the judgment rendered in favor of the defendant following the trial court's acceptance of the fact finder's report over the plaintiff's objection. We affirm the judgment of the trial court.

This action was commenced by the plaintiff against the defendant, an attorney, for recovery of prior grants of public assistance, pursuant to the program of Aid

---

[1] The plaintiff is the state, acting by and through R. Michael Dunn, commissioner of administrative services.

to Families with Dependent Children. The complaint claims that the defendant violated the plaintiff's statutory lien rights to the proceeds of a cause of action of a parent of a beneficiary of assistance. The plaintiff predicates the action on the provisions of General Statutes §§ 17b-93 and 17b-94.[2] The matter was heard by a fact finder who recommended that judgment be rendered in favor of the defendant.

There is no dispute about the essential facts. The defendant represented a client in a personal injury action arising from an automobile accident, brought against another individual and the state. On July 14, 1992, the plaintiff notified the defendant of its statutory lien without specifying the amount. The letter, after citing the appropriate statutes, directed the defendant that, upon settlement or other recovery, he was immediately to send a letter to the plaintiff requesting a final statement of the state's claim. The letter further indicated that if a final statement was not sent within thirty days of that request, the defendant would be free to release the full proceeds. On September 4, 1992, following settlement of the matter, the defendant sent a one line letter to the plaintiff stating: "Please provide me with the amount of the State's lien."

[2] General Statutes §§ 17b-93 and 17b-94 were formerly General Statutes (Rev. to 1993) §§ 17-83e and 17-83f. Although this action was commenced prior to recodification, the parties have employed the current statutory citations, as will we.

General Statutes § 17b-93 (a) provides in relevant part: "[T]he parents of an aid to dependent children beneficiary shall be liable to repay, subject to the provisions of section 17b-94, to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. . . ."

General Statutes § 17b-94 (a) provides in relevant part: "[I]f, after settlement of the cause of action, or judgment thereon, the commissioner of administrative services does not inform the attorney for the beneficiary of the amount of the lien which is to be paid to the commissioner of administrative services within thirty days of receipt of the written request of such attorney for such information, such attorney may distribute such proceeds to such beneficiary and shall not be liable for any loss the state may sustain thereby."

On October 3, 1992, forty days after sending the letter and not having received a response, the defendant disbursed the balance of the settlement proceedings.

The fact finder concluded that the defendant had complied with the statute in disbursing the proceeds of the settlement, not having been informed of the amount of the claimed lien within thirty days of the plaintiff's having received written request of the amount of such lien.

The primary issue on appeal is whether the trial court properly concluded that the defendant's letter complied with § 17b-94. The plaintiff argues that the letter was an insufficient request because it failed to mention that the case had been settled, or even to request a "final" amount of the lien. The plaintiff acknowledges that the statute does not expressly require a notification of settlement in order to trigger the thirty day response time, but argues that the obligation to do so is necessarily implied therein.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . ." (Citations omitted; internal quotation marks omitted.) *Dos Santos* v. *F. D. Rich Construction, Inc.*, 233 Conn. 14, 20, 658 A.2d 83 (1995). We look to the legislative history of a statute only if it is ambiguous. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991). A statute does not become ambiguous because the parties argue its meaning differently. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 63, 578 A.2d 1054 (1990). The legisla-

tive intent is to be found, not in what the legislature intended to say, but in the meaning of what it did say. *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 652, 594 A.2d 952 (1991). We must construe a statute without reference to whether we feel that it might be improved by adding to it or interpreting it differently. See *Emergency Medical Services Commission* v. *Freedom of Information Commission*, 19 Conn. App. 352, 355, 561 A.2d 981 (1989). It is our duty to apply the law, not to make it. *Murray* v. *Lopes*, 205 Conn. 27, 34, 529 A.2d 1302 (1987).

Section 17b-94 provides that "if, after settlement of the cause of action the commissioner . . . does not inform the attorney . . . of the amount of the lien which is to be paid . . . within thirty days of receipt of written request . . . for such information, [the] attorney may distribute [the] proceeds . . . ." The language of the statute is clear and unambiguous. We, therefore, assume that it expresses the intention of the legislature and we need inquire no further. *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, 37 Conn. App. 85, 93, 654 A.2d 1252, cert. denied, 233 Conn. 902, 657 A.2d 641 (1995).

The plaintiff argues that the construction of a statute by the agency charged with its enforcement is entitled to considerable deference. While that may ordinarily be so, where an administrative interpretation leads to a result that is contrary to the plain language of the statute, we will ascertain and give effect to the apparent intent of the legislature. *State* v. *Blasko*, 202 Conn. 541, 553, 522 A.2d 753 (1987). Our determination is that the statutory language yields a plain and unambiguous resolution, and we need inquire no further. *State* v. *Mattioli*, 210 Conn. 573, 576, 556 A.2d 584 (1989).

The Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., prescribes a statutory method for the adoption, amendment or repeal of any

regulation. The UAPA procedures for the adoption of regulations are intended to govern that part of the administrative process that resembles a legislature's enactment of a statute. The plaintiff, as an administrative agency, has the power to adopt regulations to carry into effect the will of the legislature as expressed by the statute. See *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care*, 177 Conn. 356, 361–63, 417 A.2d 358 (1979). The plaintiff does not claim to have adopted any regulations in this regard. Of course, when a statute and a regulation conflict, the statute must prevail. *Yanni* v. *DelPonte*, 31 Conn. App. 350, 357, 624 A.2d 1175 (1993); see also *Austin* v. *Housing Authority*, 143 Conn. 338, 348–49, 122 A.2d 399 (1956).

Further, while we recognize that the action of a defendant in disbursing the funds in disregard of the state's lien constitutes a conversion for which the state is entitled to damages; *State* v. *Angelo*, 39 Conn. App. 709, 713, 667 A.2d 81 (1995); and that conversion is a tort; *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 164 (1994); we also recognize that the punitive nature[3] of the action against the defendant requires a strict interpretation of the statute. The statute's clear language directs the attorney to request the amount of the lien and nothing more. We assume, therefore, that the language expresses the legislature's intent. *Continental Ins. Co.* v. *Cebe-Habersky*, 214 Conn. 209, 213, 571 A.2d 104 (1990).

The plaintiff also claims that the trial court should not have accepted the fact finder's report in that material and probative evidence as to the agency's interpreta-

---

[3] We perceive the action to be punitive in nature because it creates the personal liability of the attorney for funds that he may have distributed to his client.

tion of § 17b-94 was excluded along with the practical reasons for such interpretation. Our review of the record shows the claim to be without merit because the statute is unambiguous.

The judgment is affirmed.

In this opinion SPALLONE, J., concurred.

SCHALLER, J., dissenting. The dispositive issue in this case is whether General Statutes § 17b-94 should be interpreted to permit an attorney to disburse settlement proceeds to a beneficiary free of liability for any loss the state may thereby sustain after that attorney has requested the amount of the state's lien against such proceeds *without notifying the commissioner that the case has been settled.* Because the trial court's interpretation of § 17b-94 leads to an irrational result that thwarts the legislative purpose, I respectfully dissent. Although I agree with the majority's statement of essential facts, it is important to emphasize that the defendant attorney did not notify the commissioner of the September 4, 1992 settlement.

My disagreement is premised on fundamental principles of statutory interpretation. " '[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature.' " *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996), quoting *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80 (1995). " 'It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary. *Winslow* v. *Lewis-Shepard, Inc.*, 216 Conn. 533, 538, 582 A.2d 1184 (1990). That axiom only applies in full force, however, "[w]here . . . the language of a statute is . . . *absolutely* clear" on its face and where no ambiguity is raised in applying the statute in a particular case. . . . *Anderson* v. *Ludgin*, 175 Conn. 545, 554, 400 A.2d 712 (1978) . . . .' "

(Emphasis in original.) *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 225, 602 A.2d 1019 (1992).

This is a situation in which "application of the statute . . . reveals a latent ambiguity in seemingly unambiguous language . . . ." Id., 227. Section 17b-94 is ambiguous because it requires the commissioner to respond to an attorney's request for the amount of the state's lien within thirty days in cases in which settlement or judgment has occurred, but it fails to specify how the commissioner is to know that the pivotal event has occurred. In other words, the operation of the thirty day response requirement depends upon the fact of settlement or judgment, but § 17b-94 fails expressly to provide who must advise the commissioner of that fact.

Given that latent ambiguity, we are entitled to " 'turn for guidance to the purpose of the statute and its legislative history to resolve that ambiguity.' *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). We particularly look to the history, the purpose, the objective and the underlying policy of the statute. *Anderson* v. *Ludgin,* supra [175 Conn. 554]." *Rose* v. *Freedom of Information Commission,* supra, 221 Conn. 227.

A search of legislative history reveals that Public Acts 1977, No. 77-263, the act that brought § 17b-94 into existence, was enacted in response to the type of situation presented in *State* v. *Blawie,* 31 Conn. Sup. 552, 334 A.2d 484 (1974), cert. denied, 167 Conn. 693, 333 A.2d 70 (1975)[1] which provoked complaints from the trial bar that the state's response time on requests for lien amounts was inordinately long. See Conn. Joint

---

[1] In *State* v. *Blawie,* supra, 31 Conn. Sup. 558, the Appellate Division of the Court of Common Pleas held that the defendants' attorneys' disbursement of funds in disregard of the state's lien on the funds constituted a conversion despite the state's failure to take affirmative action to insist on its lien rights. The court noted that the defendants' liability for the conversion attached when the state gave the defendants notice of its statutory lien. Id., 556.

Standing Committee Hearings, Judiciary, Pt. 3, 1977 Sess., p. 691. Public Acts 1977, No. 77-263, was designed, therefore, to shorten the response time in situations in which a settlement or judgment had occurred so that attorneys would be able to disburse funds to their clients and the state without inordinate delay. See 20 S. Proc., Pt. 4, 1977 Sess., pp. 1416–17; 20 H.R. Proc., Pt. 8, 1977 Sess., pp. 3214–15.

The legislative history makes it clear that the legislature enacted Public Acts 1977, No. 77-263, not only for the benefit of the beneficiary and the attorney, but for the benefit of the state as well. Senator Salvatore DePiano stated that the delay "has caused inconvenience not only to the welfare recipient but also to the State of Connecticut in that the State of Connecticut is being deprived of money that would normally come to them . . . ." 20 S. Proc., Pt. 4, 1977 Sess., p. 1417. To effectuate these purposes and goals, "[w]hat this bill would do is require the attorney for the recipient or for the beneficiary to *notify* the department and within thirty days of such *notification* the Commissioner must advise the attorney of the amount of the lien . . . ." (Emphasis added.) 20 H.R. Proc., Pt. 8, 1977 Sess., pp. 3214–15, remarks of Representative Ernest N. Abate.

The 1977 amendment clearly conditions the thirty day response period on the occurrence of two events. The first is settlement or judgment; the second is receipt of *notice* of such in a written request by the attorney for a beneficiary. The commissioner forfeits the state's rights under § 17b-94 only when both events occur and are followed by the commissioner's failure to respond within thirty days. Aside from the beneficiary, the only person who possesses all of the information necessary to *notify* the commissioner is the beneficiary's attorney.[2]

<hr>

[2] Although the majority asserts that the statute involves "punitive" action against the attorney in this situation, no authority is offered for that proposi-

If the commissioner is deemed to forfeit the state's rights against the attorney under § 17b-94 even when the attorney fails to notify the commissioner that the situation is one that requires the thirty day response, a bizarre and irrational result is produced. In order to protect the state's lien rights, the commissioner will be obligated to respond within thirty days to *every* request for lien amounts. The legislative goal of specifying the particular situations that require speedy action for the benefit of beneficiaries, their attorneys and the state will be subverted because the commissioner will be compelled to respond with equal speed to every request. As a consequence, it will become more difficult to provide speedy responses to fulfill the legislative purpose, and the purpose will be thwarted.

Our Supreme Court recently reiterated that " '[i]n seeking to discern [legislative] intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.' " *State* v. *Burns*, supra, 236 Conn. 22–23, quoting *State* v. *Spears*, supra, 234 Conn. 86–87. The court continued: "If 'a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to "bizarre results" destructive of that purpose, the former should prevail.' " *State* v. *Burns*, supra, 23, quoting *State* v. *Williams*, 206 Conn. 203, 210, 536 A.2d 583 (1988).

A statutory interpretation that fails to recognize the obligation of the attorney to notify the commissioner about the settlement or judgment produces a result that

tion and I am not aware of any. Under § 17b-94, the state possesses a lien on the proceeds of settlement and the attorney commits a conversion if he disburses them in disregard of the state's lien. *State* v. *Angelo*, 39 Conn. App. 709, 713, 667 A.2d 81 (1995).

neither comports with common sense nor takes into account the interest of the state. "Fundamental tenets of due process . . . require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." *Kron* v. *Thelen,* 178 Conn. 189, 193, 423 A.2d 857 (1979); *Fairfield* v. *D'Addario,* 149 Conn. 358, 363, 179 A.2d 826 (1962) (implied condition precedent of reasonable notice); *State* v. *Boles,* 5 Conn. Cir. Ct. 22, 30, 240 A.2d 920 (1967) (" 'reasonable notice' is a relative term which varies with the circumstances under which it is called into use"). Because § 17b-94 grants the state an interest in the adjudication of claims by welfare recipients and is designed to provide benefits to the state, common sense dictates that the commissioner should be given notice of the result of such an adjudication.

A statute should not be interpreted to thwart its purpose simply because the legislature's purpose could have been more clearly stated. See *Frillici* v. *Westport,* 231 Conn. 418, 435–36, 650 A.2d 557 (1994). " '[W]e will assume that the legislature intended to accomplish a reasonable and rational result.' " *State* v. *Brown,* 235 Conn. 502, 516, 668 A.2d 1288 (1995), quoting *State* v. *Breton,* 235 Conn. 206, 226, 663 A.2d 1026 (1995). Although my interpretation of § 17b-94 identifies an obligation on the part of the beneficiary's attorney that is not expressly stated in the statutory language, it is entirely consistent with the legislative history and a common sense reading of the statute, and is the only interpretation that produces a reasonable and rational result. Accordingly, I would reverse the judgment of the trial court.

For the foregoing reasons, I respectfully dissent.