[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by plaintiffs from the decision of defendant Waterford Conservation Commission (hereinafter the "Commission") in denying their application to conduct a regulated activity within wetlands under the jurisdiction of the Commission. For reasons hereinafter stated, the decision of the Commission is affirmed.
Plaintiffs have appealed under the provisions of General Statutes § 22a-43 which, in effect, limits such appeals to any persons aggrieved by any regulation, order, decision or action CT Page 10398 of commission. "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision as distinguished from a general interest, such as is the concern of all members of the community as a whole, second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. Pomazi v. Conservation Commission,220 Conn. 476, 482-83 (1991).
A showing of aggrievement is a jurisdictional prerequisite to maintaining an administrative appeal under a statute such as § 22a-43. Rose v. Freedom of InformationCommission, 221 Conn. 217, 223-24 (1921). At the time of trial, plaintiffs elected to introduce no evidence on this issue. In the absence of an evidentiary hearing on the question, the court may examine the whole record to determine whether or not aggrievement has been proven. State Library v.Freedom of Information Commission, 240 Conn. 824, 832 (1997). The record here clearly establishes that plaintiffs were the owners of the wetlands, applied for a permit to conduct regulated activities within such wetlands and that the application was denied. Plaintiff's status as-owners of the property in question and unsuccessful applicants for a permit to conduct regulated activities establishes that they are aggrieved and have standing to prosecute their appeal. Huckv. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 530(1987).
The Commission has been established as the inland wetlands agency authorized to carry out the provisions of § 22a-36 to § 22a-45 of the General Statutes as required by General Statutes § 22a-42. Se also § I of the Inland Wetlands and Watercourses Regulations of the town of Waterford, Connecticut (hereinafter the "Regulations").
No questions have been raised as to any jurisdictional issues. All notices appear to have been properly published and no jurisdictional defects have been noted at any stage in the proceeding.
The basic facts which underlie this appeal are not greatly in dispute. Plaintiff acquired the land in question CT Page 10399 and a contiguous parcel on February 28, 1992. The land was in a residential zoning and the proposed use is appropriate under the zoning regulations.
The status of the property as an established building lot was the source of considerable controversy. The record indicates that the property was depicted on a map showing a layout of lots filed by Arthur and Alice Brailsford on November 15, 1951. Plaintiffs contend that this map establishes the property as a building lot. The attorney for the defendants McCabe and Anderson disputes this claim and argues that the map does not show the property as a building lot but as property outside of land designated as lots.
This dispute does not appear to be of great significance since plaintiffs have applied for a permit under § 6.1 of the Regulations.
Plaintiffs are not claiming that the land is exempt from the prohibitions against regulated activities as a subdivision lot under General Statutes § 22a-40 (2) or § IV, 4.1b of the Regulations.
The record indicates that on June 24, 1996, plaintiff Kathleen Sheehan filed an application to conduct "Regulated Activities, Sec. 6" on property owned by both plaintiffs at 48 Old Norwich Road. The construction of a single-family house was listed as the activity to be reviewed. The activity was described as "excavation for and construction of a single-family house, driveway construction, underground utilities, construction of retaining wall and filling. The acreage of the property was listed as 1.34. The acreage of wetlands was 1.06 and the acreage of wetlands to be altered was 0.11.
The application was first considered at a regular meeting of the Commission on June 27, 1996. The application was also considered at subsequent meetings of the Commission. At these meetings, plaintiff's representative presented evidence in support of the application. There was considerable opposition to granting the permit and parties in opposition were heard and letters opposed to the permit were received by the Commission.
At the meeting of September 12, 1996, a Verified Intervention Petition, alleging that the administrative CT Page 10400 proceedings involved conduct which had or which was reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state, was filed under the provision of General Statutes § 22a-19 on behalf of defendants Anderson and McCabe.
In the course of its presentations before the Commission, plaintiffs presented two alternate proposals for placement of the building on the land.
After determining that the application involved a significant activity, the Commission scheduled a public hearing on the application as required by § 1X of the Regulations. The public hearing was held on October 10, 1996. At the hearing, the parties at interest were heard and on November 21, 1996, the Commission denied plaintiff's application stating the reasons for its action. This appeal ensued.
"The plaintiff shoulders the burden of proof when challenging a decision of an administrative agency. A showing by the plaintiff that another decision maker might have reached a different conclusion does not satisfy this burden. Instead, the plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision. The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence." (Citations omitted.) Keiser v. ConservationCommission, 41 Conn. App. 39, 41 (1996).
If the record provides substantial evidence to support the decision of the Commission, the court should not substitute its judgment for that of the administrative agency.Strong v. Conservation Commission, 28 Conn. App. 435, 440
(1992).
The court must search the record of the Commission's hearings to determine whether there was an adequate basis for the Commission's decision. The Commission is responsible for assessing witnesses' credibility and reviewing factual findings. The court cannot disturb an agency's decision as CT Page 10401 long as there is substantial evidence in support of any one reason given for the agency's action. Milardo v. InlandWetland Commission, 27 Conn. App. 214, 218 (1992).
In denying plaintiff's application, the Commission stated its reasons as follows:
 1. Unacceptable impact to a high quality wetland and watercourses.
 2. Lack of significant mitigation of the proposed impacts.
 3. Lack of alternatives that substantially reduce the proposed impacts.
Each of the reasons stated by the Commission must be reviewed in light of the record. "Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision."Keiser v. Conservation Commission, supra 41 Conn. App. 39, 41;DeBeradinis v. Zoning Commission, 228 Conn. 187, 199 (1994).
 I
Section 10.2 of the Regulations sets forth the standards and criteria which the Commission must use in considering applications to conduct regulated activities within wetlands.
The Section provides:
 The Commission shall consider all relevant facts and circumstances in making its decision on any application for a permit, including but not limited to the following:
 a. The environmental impact of the proposed action, including the effects on the inland wetlands and watercourse's capacity to support fish and wildlife, to prevent flooding, to supply and protect surface and ground waters, to control sediment, to facilitate drainage, to control pollution, to support recreational activities and to promote public health and safety. CT Page 10402
Under the Regulations the environmental impact of the proposed regulated activity was a proper concern for the Commission. A review of the record indicates that there was substantial evidence to support the Commission's conclusion that the proposed regulated activity would have an unacceptable impact on high quality wetlands.
It does not appear to be in dispute that the property in question consisted of 1.34 acres. About 80% of the land was wetland and was located in a flood hazard area. Plaintiff's wetlands were part of a five acre wetland system.
Church Brook, a perennial watercourse, flowed through the property and was subject to periodically overflowing its banks. The wetland provided a flood storage area absorbing the overflow and runoff. The wetlands maintained water quality in the brook by absorbing pollutants flowing from a highway storm drain.
There was substantial evidence to support the Commission's conclusion that the wetlands were of high quality. The wetlands were wooded with dense vegetation. The canopy was dominated by substantial red and silver maples growing in and possibly near the wetlands. There was testimony that the large silver maples were rare in the state. The dense vegetation was varied and together with the larger maple trees provided a valuable habitat for a variety of animal and bird species.
Plaintiffs' proposal was for the construction of a residential structure sixty (60) feet in length without a basement. This would be located ninety (90) feet from the brook. The construction would involve filling approximately five thousand (5,000) square feet into the wetlands.[1]
At the request of the Commission, plaintiff submitted two alternate proposals both partly in the wetlands. Alternate A would be located fifty (50) feet from the brook and would involve filling two thousand nine hundred and fifty-four (2,954) square feet of wetlands. Alternate B would be located seventeen (17) feet from the brook and would involve filling two thousand two hundred and eighty-two (2,282) square feet of wetlands.
Plaintiff's expert maintains that the proposed regulated CT Page 10403 activity would have minimal effect on the wetlands and urged the Commission to approve the application. The Commission rejected this advice, gave more credence to knowledgeable witnesses who testified to the contrary, and concluded that the construction would be unacceptable.
The Commission was responsible for assessing the credibility of the witnesses and reviewing the factual findings. Milardo v. Inland Wetland Commission, supra,27 Conn. App. 218.
The Commission's conclusion, with respect to the negative impact which the regulated activity would have on the wetlands and watercourses, was supported by the substantial evidence in the record.
Such evidence would support a finding that the construction would be almost totally within the wetlands. It would result in the loss of a number of large maple trees. Also the area to be protected by the proposed retaining wall would be relatively small so that activities incidental to the safety and maintenance of the residence would of necessity extend into the adjoining wetlands. A significant problem would involve the large trees growing in close proximity to the proposed residence. Some of these trees were the rare silver maples. There would be a prudent incentive to remove these trees for reasons of safety. There was testimony that due to the high water table in the wetland area, the trees developed shallow root symptoms and were prone to be blown over in severe storms. This was confirmed by testimony describing a number of windblown trees lying in the wetlands. There was also testimony that limbs of these trees were likely to break off due to wind and ice creating a dangerous and undesirable situation for any potential resident of the site.
Aside from its effect on the natural habitat of birds and animals, removal of the trees would result in more direct sunlight reaching the ground causing a drying effect in the wetlands.
Any extension of the culvert would reduce the travel distance of pollutants draining from the highway through the swamp. This would have a negative impact on the water quality in Church Brook. CT Page 10404
Considerable evidence existed in the record to show that the proposed construction would result in the introduction of aggressive noxious weeds known as phragnites into the wetlands.
There was substantial evidence to support a finding that the cumulative negative effect of the proposed regulated activity would reduce the flood storage area of the swamp and wetlands and have a deleterious impact on indigenous wildlife.
 II
The Commission gave as its second reason for denying plaintiff's application that there were a "lack of significant mitigation of-the proposed impacts." Section 10.2f of the Regulations requires the Commission to consider measures which would mitigate the impact of any aspect of the proposed regulated activity. This would include actions which could feasibly be carried out by plaintiffs which would protect the wetlands and watercourse's natural capacity to support wildlife, prevent flooding, control sedimentation and erosion and assimilate waste.
The record indicates that plaintiffs' representatives met with the Commission on a number of occasions. As a result of those meetings and discussions, adjustments were made and alternate sites involving landfill were proposed. There was, however, substantial evidence to support the Commission's conclusion that plaintiffs' efforts in this area were insufficient. The third reason given by the Commission, discussed below, also considers attempts at mitigation.
 III
The third reason given by the Commission for denying the permit was a lack of alternatives that substantially reduced the unacceptable impact on the wetlands and watercourses. Section 10.2b of the Regulations required the Commissions to consider alternatives to the original proposal. The burden of proof concerning "feasible and prudent alternatives" lies with the plaintiff-applicant. Hoffman v. Inland WetlandsCommission, 28 Conn. App. 262, 265 (1992).
As noted, plaintiffs submitted two alternatives to their original request. Both of the proposed alternatives placed CT Page 10405 the building partially in the wetlands and closer to the brook. Alternate A would be located fifty (50) feet from Church Brook and would involve two thousand nine hundred and fifty-four (2,954) square feet of wetlands. Alternate B would be only seventeen (17) feet from the brook and would involve filling two thousand two hundred eighty-two (2,282) square feet of wetlands.
There does not appear to have been any strong advocacy for proposals A and B and there is nothing to indicate that either A or B would have a significantly lesser impact on the wetlands than the original proposal.
Plaintiffs refused to consider an alternative which would place the construction on adjacent land owned by them. The land does not appear to be wetland and construction in that location would have little effect on the wetland and Church Brook. The reason advanced by plaintiffs for refusing to consider the alternative was that the proposed construction would be too close to their existing house. This was a personal preference on the part of the plaintiffs.
Section 10.2b, which requires the Commission to consider alternatives to the original proposal requires the consideration of possible different locations. Where the Commission found that the original proposals would have a damaging effect on the wetlands, it was appropriate for the Commission to consider, as an alternative to the proposed requested activity, construction of the residence on plaintiffs' adjoining land. Hoffman v. Inland WetlandCommission, supra, 28 Conn. App. 268.
There was substantial evidence in the record to support the Commission's decision with respect to acceptable alternatives. Plaintiffs have not established that the Commission abused its discretion in its conclusion with respect to any acceptable alternatives.
 IV
In their complaint, plaintiffs request that the court find that the decision of the Commission constituted the equivalent of a taking without compensation.
A landowner who purchases property with a reasonable CT Page 10406 expectation of residential or commercial development has suffered a taking if regulatory constraints allow such landowner to use the land only in the natural state without any economically viable alternate use thereof. Gil v. InlandWetlands Watercourses Agency, 219 Conn. 404, 414 (1991).
Plaintiffs are not entitled to judicial review of the merits of their regulatory takings claim until they have met the requirement of establishing the finality of the agency's determination. To demonstrate the requisite finality, a property owner asserting a regulatory taking claim, bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of the property. Gil v.Inland Wetlands Watercourses Agency, supra, 219 Conn. 415.
In the case at bar, it cannot be found that plaintiffs have met their burden of demonstrating finality.
Plaintiffs purchased real property which included this high quality wetlands in 1992. The Inland Wetlands 
Watercourses Regulations were first enacted for the Town of Waterford in 1974, and the General Statutes establishing regulatory activities over wetlands predated the town regulations. At the time of purchase, plaintiffs knew, or should have known, that any development within the wetlands would be difficult and that repeated applications might be necessary.
Plaintiffs, who own land adjacent to the wetland have submitted one request with two similar alternatives. The Commission has rejected the application but plaintiffs have failed to establish that the Commission's action with respect to the property is final or that the Commission would not approve a request which might have a minimal effect on the Wetlands.
 V
Accordingly, judgment is rendered for defendants against the plaintiffs affirming the decision of the defendant Commission.
Joseph Purtill Judge Trial Referee CT Page 10407