FRANK CARPENTER *v.* FREEDOM OF
INFORMATION COMMISSION ET AL.
(AC 19144)

Landau, Mihalakos and Pellegrino, Js.

Argued May 1—officially released July 25, 2000

*William J. Dolan,* for the appellant (plaintiff).

*Victor R. Perpetua,* appellate attorney, with whom,
on the brief, was *Mitchell W. Pearlman,* general coun-
sel, for the appellee (named defendant).

*Ralph G. Elliot,* for the appellees (defendant The
Hartford Courant et al.).

*Opinion*

LANDAU, J. This is an appeal by the plaintiff, Frank Carpenter, from the judgment of the trial court dismissing his administrative appeal from a decision of the defendant freedom of information commission (commission).[1] The sole issue on appeal is whether the court improperly concluded that records that relate to a teacher's personal misconduct that occurs during class time and involves the use of school facilities is not exempt from disclosure pursuant to General Statutes § 10-151c.[2] We affirm the judgment of the trial court.

The genesis of this freedom of information appeal was a June 2, 1997 request from The Hartford Courant (Courant) to the board of education of the town of Plymouth, seeking certain school records that involved the plaintiff. The superintendent of schools wrote to the plaintiff, informing him of the request and asking whether he objected to the records' being disclosed. On June 4, 1997, the plaintiff wrote to the superintendent objecting to the disclosure of the subject records. The superintendent so informed the Courant and denied its request. The Courant then filed a complaint with the commission, pursuant to the Freedom of Information Act, General Statutes (Rev. to 1997) § 1-18a et seq., now § 1-200 et seq. The substance of the Courant's complaint

---

[1] The other defendants are the Plymouth board of education and the superintendent of schools (collectively the board of education), and The Hartford Courant, Matthew Brown and Ken Byron (collectively the Courant).

[2] General Statutes § 10-151c provides: "Any records maintained or kept on file by any local or regional board of education which are records of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-210, provided that any teacher may consent in writing to the release of his records by a board of education. Such consent shall be required for each request for a release of such records. For the purposes of this section the term 'teacher' shall include each certified professional employee below the rank of superintendent employed by a board of education in a position requiring a certificate issued by the State Board of Education."

was the board of education's failure to disclose all records "relating to incidents in which school employees are alleged to have allowed, either inadvertently or intentionally, students to have access to pornography or sexually explicit material."

At a hearing before the commission, the plaintiff, an elementary school teacher, appeared and was made a party. The hearing officer conducted an in camera inspection of the records sought by the Courant and found that the records concerned the plaintiff's *personal* conduct and did not relate to his teaching or other professional duties. The commission adopted the hearing officer's preliminary report and ordered the board of education to disclose the records.[3] The plaintiff appealed to the Superior Court, which dismissed the appeal, concluding that "the documents do not constitute records of employee performance and evaluation within the meaning of [General Statutes] § 10-151c. The documents do relate to a specific incident of alleged misconduct."

On appeal, as he did before the Superior Court, the plaintiff argues that § 10-151c exempts the requested documents concerning his misconduct from disclosure because they are records of "teacher performance and evaluation" that are not public records and, therefore, are not subject to disclosure. He also maintains that the statutory phrase "records of teacher performance and evaluation" has been given a broad meaning by judicial gloss, and that the Superior Court improperly determined that the subject records were not "records of teacher performance and evaluation."

"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Pro-

---

[3] The commission ordered the correspondence between the plaintiff and the superintendent disclosed, but not the board's notes concerning its investigation of the incident.

cedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant. . . . *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773, 535 A.2d 1297 (1988). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Id., 774.] Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980). . . . *Perkins* v. *Freedom of Information Commission*, [228 Conn. 158, 164–65, 635 A.2d 783 (1993)]. . . . *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995)." (Internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission*, 44 Conn. App. 611, 616–17, 691 A.2d 29 (1997), aff'd, 245 Conn. 149, 714 A.2d 664 (1998), quoting *Hartford* v. *Freedom of Information Commission*, 41 Conn. App. 67, 72–73, 674 A.2d 462 (1996).

Where our resolution of a plaintiff's claim requires us to apply the provisions of a statute, namely § 10-

151c, to a specific factual scenario, we must be guided by the well established tenets of statutory interpretation. "It is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent. . . . *Starr* v. *Commissioner of Environmental Protection*, 236 Conn. 722, 737, 675 A.2d 430 (1996). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Fleming* v. *Garnett*, 231 Conn. 77, 92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). Furthermore, in construing this statute, we are mindful that exemptions to statutes are to be strictly construed. *Conservation Commission* v. *Price*, 193 Conn. 414, 424, 479 A.2d 187 (1984); *Aaron* v. *Conservation Commission*, 183 Conn. 532, 549, 441 A.2d 30 (1979). Finally, common sense must be used in statutory interpretation, and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . . *Elliot* v. *Sears, Roebuck & Co.*, 229 Conn. 500, 515, 642 A.2d 709 (1994); *State* v. *Hinton*, 227 Conn. 301, 320, 630 A.2d 593 (1993)." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 140–41, 680 A.2d 1329 (1996).

"[I]t is well established that the general rule under the Freedom of Information Act [FOIA] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the FOIA legislation. *Board of Education* v. *Freedom of Information Commission*, [208 Conn. 442, 450, 545 A.2d 1064 (1988)]. The burden of proving the applicability of an exception to the FOIA rests upon the party claiming it. *Rose* v. *Freedom of Information*

*Commission,* 221 Conn. 217, 232, 602 A.2d 1019 (1992)." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission,* 221 Conn. 393, 398, 604 A.2d 351 (1992).

"When the legislature uses a broad term [records] . . . in an administrative context, without attempting to define that term, it evinces a legislative judgment that the agency should define the parameters of that term on a case-by-case basis. *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* [212 Conn. 100, 106, 561 A. 2d 429 (1989)]." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission,* supra, 221 Conn. 398–99. It is the commission's task to determine whether the records at issue were " 'records of teacher performance and evaluation' within the broad meaning of that term. The practical construction placed on the statute by the agency, if reasonable, is highly persuasive." Id., 399.

Applying these principles to the present case, we are persuaded, as was the trial court, that the commission reasonably concluded that the board of education documents related only to a specific incident of personal misconduct, and were not records of teacher performance and evaluation. Only the plaintiff's personal conduct was at issue; nothing in the record relates to the plaintiff's ability to teach. Not all disciplinary records are the same; each presents a separate factual issue. Our Supreme Court upheld as reasonable the commission's determination that "the legislature did not intend to exempt from disclosure nonevaluative information from a letter pertaining to a teacher . . . ." Id.[4] Because

---

[4] The plaintiff has not contested the commission's conclusion that the board of education records are not exempt under General Statutes § 1-19 (b) (2). To establish the applicability of § 1-19 (b) (2), the plaintiff must demonstrate both that the information sought did not pertain to legitimate matters of public concern and that the information was highly offensive to a reasonable person. *Perkins* v. *Freedom of Information Commission,* 228 Conn. 158, 175, 635 A.2d 783 (1993).

the commission's determination in this case is reasonable, we will not disturb it.

A record of personal misconduct occurring during class hours does not automatically fall under the heading of "teacher performance and evaluation." To include all records of serious teacher misconduct, up to and including assault or sexual violation, under the language of the statute would exclude such records from public scrutiny and inquiry for criminal prosecution. Such an exclusion would defy our common sense, rational result approach to statutory interpretation. Records of a teacher's personal misconduct occurring during class time, but unrelated to teaching, that exposes a child to noninstructional, sexually explicit material therefore should not be protected from disclosure under § 10-151c. The Superior Court properly applied the law to the facts found by the commission and dismissed the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

