JAMES WIESE *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(AC 24347)

Lavery, C. J., and McLachlan and Dupont, Js.

Argued February 9—officially released April 27, 2004

*Ronald Cordilico*, for the appellant (plaintiff).

*Victor R. Perpetua*, appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

*Gabriel J. Jiran*, for the appellee (defendant board of education of the town of Tolland).

*Opinion*

DUPONT, J. This is an appeal by the plaintiff, James Wiese, from the judgment of the trial court, upholding a decision of the defendant freedom of information commission (commission) that ordered the defendant superintendent of schools (superintendent) and the defendant board of education of the town of Tolland (board) to disclose certain material to the defendant Journal Inquirer newspaper and the defendant Chris

Dehnel, a reporter with the newspaper.[1] The principle issue is whether a "last chance agreement" (agreement) relating to the plaintiff should be disclosed under the Freedom of Information Act (act), General Statutes § 1-200 et seq., and General Statutes § 10-151c. We affirm the judgment of the trial court.

The following undisputed facts as related in the agreement and garnered from the procedural history are pertinent to the plaintiff's appeal. The plaintiff, a teacher employed by the board, showed a film entitled "Damned in the USA" to his American government class at Tolland high school as part of his course on minority views and dissent in American history. The plaintiff described the film and notified his students some days ahead of time that they could be excused from class if they did not want to watch the film. The agreement at issue concerns a single act of alleged misconduct, namely, the showing of the film, and does not concern any act of verbal or physical abuse toward any student by the plaintiff. In the days following the showing of the film, the plaintiff discussed with his students the possibility of his being disciplined by school authorities because of the showing.

The plaintiff's superiors learned that he had shown the film, investigated the matter and found the film to be age inappropriate. As a result of the investigation, the superintendent, the plaintiff and a teachers' union representative, on January 6, 2000, signed the agreement related to the incident. It detailed the superintendent's findings of fact, the punishment involved and penalties for future infractions.

On February 12, 2002, the defendant newspaper and the defendant reporter requested from the Tolland pub-

---

[1] The defendant Tolland board of education and the defendant superintendent of schools of the town of Tolland did not take a position on the issue of disclosure at trial, but stated that they had the material and had not disclosed it because of the plaintiff's objection to disclosure.

lic school system the records surrounding the showing of the film. The only document related to the incident was the agreement. The superintendent notified the plaintiff of the request, and the plaintiff timely filed an objection to that request, citing an exception contained in § 10-151c[2] to the mandatory disclosure requirements of General Statutes § 1-210 (a).[3] The defendant newspaper and the defendant reporter then filed a notice of appeal with the commission, pursuant to General Statutes § 1-206 (b) (1).

At a hearing before the commission, the plaintiff appeared and was made a party to the proceedings. The hearing officer conducted an inspection of the agreement and held that it was not a record of teacher performance and evaluation.[4] The hearing officer con-

[2] General Statutes § 10-151c provides in relevant part: "Any records maintained or kept on file by any local or regional board of education which are records of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-210, provided that any teacher may consent in writing to the release of such teacher's records by a board of education. Such consent shall be required for each request for a release of such records. . . ."

[3] General Statutes § 1-210 (a) provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right (1) to inspect such records promptly during regular office or business hours . . . or (3) receive a copy of such records in accordance with section 1-212. . . ."

[4] The legislature amended General Statutes § 10-151c in Public Acts 2002, No. 02-138, § 20, effective October 1, 2002, to add in relevant part that "records maintained or kept on file by any local or regional board of education which are records of the personal misconduct of a teacher shall be deemed to be public records and shall be subject to disclosure pursuant to the provisions of subsection (a) of section 1-210. . . ."

The plaintiff claims on appeal that this language is meant to be construed prospectively only. We agree with the trial court, however, that the amendment only codified the meaning of § 10-151c to make it clear that records of teacher misconduct are not included in the term "teacher performance and evaluation" so as to preclude disclosure. See *Board of Education* v. *Freedom of Information Commission*, 210 Conn. 590, 593, 556 A.2d 592 (1989).

cluded that the agreement fell under the ambit of the act and recommended that it be disclosed. By written decision, the commission adopted the officer's report in full, as its order, on August 28, 2002.

The plaintiff appealed to the trial court from the commission's decision. He claimed that the commission erred when it determined that the agreement was not a record of "teacher performance and evaluation" within the meaning of § 10-151c. The court rendered judgment for the commission and dismissed the plaintiff's appeal. The court noted the deference afforded the commission's decision and the intentional ambiguity of the term "teacher performance and evaluation" in § 10-151c; see *Carpenter* v. *Freedom of Information Commission*, 59 Conn. App. 20, 22–25, 755 A.2d 364, cert. denied, 254 Conn. 933, 761 A.2d 752 (2000); that allows the commission to make case-by-case determinations of what information about a teacher can be disclosed.

The plaintiff claims on appeal that the agreement is an evaluation of teacher performance and not a disciplinary document and, therefore, is exempt from the disclosure requirements of § 1-210. We disagree.

Our standard of review is critical to our analysis in an administrative appeals context. We first note that judicial review of an administrative agency's action is limited by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. The scope of review is very restricted. Neither this court nor the trial court may retry the case or substitute its judgment for that of the commission. Even as to questions of law, the court's ultimate duty is to decide only whether, in light of the evidence, the agency acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and reasonably

and logically could follow from those facts. *Carpenter* v. *Freedom of Information Commission*, supra, 59 Conn. App. 23; see also General Statutes § 4-183 (j).

We also note other principles surrounding the deferential standard of review afforded administrative appeals. When the legislature intentionally uses broad terms without definition, it evinces a judgment that the agency should define the parameters of the broad terms of relevant statutes on a case-by-case basis. *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission*, 212 Conn. 100, 106, 561 A.2d 429 (1989). "The practical construction placed on the statute by the agency, if reasonable, is highly persuasive." *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 399, 604 A.2d 351 (1992).

The commission's decision was based on its interpretation of critical portions of the act, specifically § 1-210. It also based its decision on its reading of the exception to the act's disclosure requirements that are contained in § 10-151c. Section 1-210 provides in relevant part: "Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency[5] . . . shall be public records and every person shall have the right to (1) inspect such records promptly . . . ."

Section 10-151c contains an exception to the general rule that all records of public agencies are to be disclosed. The statute is designed to prevent parents from "teacher shopping" in public schools by looking at evaluations and then demanding that their children be

---

[5] "Public agency" is defined in General Statutes § 1-200 (1) (A) in relevant part as "[a]ny executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district . . . ." The commission found that the Tolland public school district fell under that definition, and there is no doubt as to the validity of that decision.

placed with one specific teacher. See 45 H.R. Proc., Pt. 13, 2002 Sess., pp. 3981–82, remarks of Representative Lawrence F. Cafero, Jr.[6] "[R]ecords of teacher performance and evaluation shall not be deemed to be public records and shall not be subject to the provisions of section 1-210, provided that any teacher may consent in writing to the release of such teacher's records by a board of education. . . ." General Statutes § 10-151c.

We must determine the validity of the commission's ruling that the agreement constituted a disciplinary record, and not a record of teacher performance and evaluation within the meaning of § 10-151c.

The act was enacted in 1975 amid a tremendous increase in the number of state agencies and their effects on individuals. The act requires openness in the activities of public agencies. *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 233, 602 A.2d 1019 (1992). It is well established that the general rule under the act is disclosure, and any exception will be viewed narrowly in light of the public policy behind the act favoring openness in all public agencies. *Pane* v. *Danbury*, 267 Conn. 669, 679–80, 841 A.2d 684 (2004); *Board of Education* v. *Freedom of Information Commission*, 208 Conn. 442, 450, 545 A.2d 1064 (1988); *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 328–29, 435 A.2d 353 (1980). Save a statutory or other exemption, the only step that the commission needs to take before ordering disclosure is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." (Internal quotation marks omitted.)

---

[6] The legislative history cited is to Public Acts 2002, No. 02-138, which amended General Statutes § 10-151c after the present dispute took place. The remarks concerning the intent of the statute are relevant to the present discussion, as Representative Cafero was speaking about the intent of § 10-151c as drafted before the amendment.

*Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 197, 585 A.2d 96 (1991).

The plaintiff claims that the agreement he signed fits the exception to the disclosure requirements that are contained in § 10-151c. He claims that although the film shown was deemed unsuitable for viewing by students in his classroom as age inappropriate, the showing was related to teaching and, therefore, a record of any action in response to its showing is an evaluation of his performance as a teacher. The commission argues that the language of the agreement clearly evinces a tone of discipline and that the document, therefore, should be disclosed.

The rather amorphous distinction between what is related to teaching as opposed to personal misconduct was refined by this court in *Carpenter* v. *Freedom of Information Commission*, supra, 59 Conn. App. 20. Simply because a document relates to an activity that takes place on school grounds, during school hours or during classroom instruction time does not always make that document a performance evaluation that is exempt from freedom of information disclosure requirements. Id., 26.

The commission argues that *Carpenter* is dispositive. Although we are guided by *Carpenter*'s analysis, this case does not fit squarely into the four corners of *Carpenter*. In *Carpenter*, the plaintiff teacher allowed students to gain access to pornographic material that had no relation to the curriculum. Id., 22. It involved an incident of personal misconduct unrelated to teaching or the curriculum, completely noninstructional, that happened to take place during school hours on school grounds.

In this appeal, it is not our role to determine whether the film shown was age inappropriate for the class or whether the plaintiff exercised appropriate judgment

in showing it and then discussing the possible discipline he would receive for showing it. Our role instead is to determine whether the information in the agreement relates to the discipline to be imposed on the plaintiff because of his showing the film and the discipline that may be imposed in the future if such behavior recurs.

This case highlights the uncharted waters between what information constitutes a record of teacher misconduct, meriting discipline, and what information constitutes a record of teacher performance in the classroom setting, meriting an evaluation of that performance. Some curriculum related activities may involve personal misconduct and others may not. An activity may be related collaterally to teaching but nevertheless merit discipline, thereby extending the tenets of *Carpenter* v. *Freedom of Information Commission*, supra, 59 Conn. App. 26. This is such a case. In the judgment of the superintendent in this case, the plaintiff's conduct, showing an age inappropriate film, merited discipline. The agreement describes that judgment and the need for discipline.

In light of all the relevant facts specific to this case, coupled with the general rule and overriding purpose of the act to encourage disclosure; see *Wilson* v. *Freedom of Information Commission*, supra, 181 Conn. 328–29; we cannot conclude that the commission acted illegally, arbitrarily, capriciously or in abuse of its discretion in determining that the agreement was not a record of teacher performance and evaluation, but rather a record related to discipline.

The judgment is affirmed.

In this opinion the other judges concurred.