******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAY R. LIEBERMAN *v.* MICHAEL ARONOW ET AL.
(SC 19452)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued September 8—officially released December 8, 2015*

*Jeffrey J. Mirman*, for the appellant (plaintiff).

*Heena Kapadia*, for the appellee (named defendant).

*Victor R. Perpetua*, principal attorney, for the appel-

lee (defendant Freedom of Information Commission).

*George Jepsen*, attorney general, and *Walter Menjivar* and *Jeffrey Blumenthal*, assistant attorneys general, filed a brief for the appellees (defendant University of Connecticut Health Center et al.).

*Opinion*

EVELEIGH, J. The primary issue in this appeal is whether two reports (reports) relating to the resolution of a formal grievance alleging misconduct against a state university faculty member fall within the exemption from disclosure under the Freedom of Information Act (act), General Statutes § 1-200 et seq., created by General Statutes § 10a-154a.[1] The plaintiff, Jay R. Lieberman, the chairman of the orthopedic surgery department at the defendant University of Connecticut Health Center (health center),[2] appeals from the judgment of the trial court dismissing his appeal from the final decision of the defendant Freedom of Information Commission (commission). The commission concluded that the reports do not constitute a "record of the performance and evaluation" within the meaning of § 10a-154a and that, therefore, the health center was required to disclose the reports pursuant to a request by the defendant Michael Aronow, an orthopedic surgeon at the health center.[3]

On appeal, Lieberman claims, inter alia, that the trial court improperly interpreted the language and legislative history of § 10a-154a. Aronow and the commission contend that the trial court properly concluded that the reports do not constitute a "record of the performance and evaluation" of a faculty member under § 10a-154a. We agree with Aronow and the commission and conclude that the reports at issue in this appeal do not fall within the exemption from disclosure contained in § 10a-154a. Accordingly, we affirm the judgment of the trial court dismissing Lieberman's appeal from the commission's decision.

The record reveals the following undisputed facts and procedural history. Aronow filed a grievance with the Health Center Appeals Committee (committee) against Lieberman. In the grievance, Aronow accused Lieberman of "incivility, vindictiveness, attempted intimidation, disrespectfulness, and harassment" directed against Aronow, other health center faculty, orthopedic residents, medical students, orthopedic department and hospital staff, other administrators, and physicians outside the health center system. Pursuant to the health center's grievance procedures, the committee issued a four page report of its findings regarding Aronow's grievance. The committee's report was subsequently sent to the Office of the Executive Vice President of Academic Affairs at the University of Connecticut. The task of reviewing the committee's report was then delegated to Philip Austin, president emeritus of the University of Connecticut. Austin subsequently wrote a one page report on the matter. Aronow requested copies of these reports pursuant to the act. The health center denied Aronow's request, reasoning that the reports were exempt from disclosure pursuant to § 10a-154a.

Aronow then filed a complaint with the commission, alleging that the health center had violated the act by failing to provide the reports.[4] Following a contested case hearing and an in camera inspection of the reports, a hearing officer of the commission issued a proposed decision concluding that the reports were not exempt from disclosure pursuant to § 10a-154a. Thereafter, the commission issued its decision, concluding that the reports were not exempt from disclosure under § 10a-154a and constituted " '[p]ublic records' " within the meaning of General Statutes § 1-200 (5).[5] In its decision, the commission reasoned as follows: "[The reports] evidence the work of professionals involved in the resolution of a grievance. The [reports] further evidence that such [a] resolution is accomplished by means of a bifurcated process in which the first stage of the process includes a fact-finding procedure and a recommendation with regard to the substantive allegations, and the second stage of the process involves a final decision as to whether a violation has occurred. . . . [T]he procedure at issue is unlike a 'performance review' in that its main focus concerns the allegations of a grievance, and not an in-depth, [year long] focus on an employee's development, work product and behavior. . . . [T]he fact that a grievance procedure and the resulting records may include reference to [fact based] events does not transform the procedure into something other than a mechanism for resolving workplace disputes, nor does it transform the [reports] into something other than [a] written recommendation and [a] final decision with regard to [a] filed grievance." Accordingly, the commission ordered the health center to provide Aronow with a copy of the reports free of charge.

Lieberman then filed an administrative appeal pursuant to General Statutes § 4-183 of the Uniform Administrative Procedure Act (UAPA). In addition to filing his administrative appeal, Lieberman obtained a stay of the commission's decision from both the commission and the trial court. The trial court further granted the commission's motion to seal the reports. The trial court considered "whether the reports are records of teacher performance or of teacher discipline and misconduct." Relying on the Appellate Court's construction of General Statutes § 10-151c in *Wiese* v. *Freedom of Information Commission*, 82 Conn. App. 604, 847 A.2d 1004 (2004), the trial court concluded that the commission properly determined that the reports do not constitute a " 'record of the performance and evaluation' " of a faculty member under § 10a-154a, reasoning that "the purpose of the reports is to respond to a grievance about workplace misconduct and not primarily to create a record of performance and evaluation of an individual faculty member." This appeal followed.[6]

On appeal, Lieberman asserts that the text of § 10a-

154a plainly and unambiguously supports his position that the reports qualify as a "record of [the] performance and evaluation" of a state university faculty or professional staff member. Lieberman further contends that the trial court improperly applied the judicial analysis of § 10-151c to § 10a-154a. Lieberman urges this court to interpret § 10a-154a as establishing a bright line test by which a record is exempt from disclosure if it contains any form of performance evaluation, regardless of the purpose behind the creation of the document, unless the faculty member who is the subject of such record consents to its disclosure.

In response, Aronow and the commission contend that, given the nearly identical language of the statutes and the references to § 10-151c in the legislative history of § 10a-154a, the trial court properly looked to prior judicial interpretations of § 10-151c and correctly applied the Appellate Court's decisions regarding records of misconduct in determining that the reports fall outside the scope of § 10a-154a. Thus, Aronow and the commission contend that the legislature was concerned about the confidentiality of formal evaluations when it enacted § 10a-154a, and not documents stemming from the filing of a formal grievance alleging misconduct against a state university faculty member.

By way of background, we cite briefly the policy of the act. The act provides in relevant part that "[e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records . . . or (3) receive a copy of such records . . . ." General Statutes § 1-210 (a).

"[T]he overarching legislative policy of [the act] is one that favors the open conduct of government and free public access to government records." (Internal quotation marks omitted.) *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 450, 984 A.2d 748 (2010). "[I]t is well established that the general rule under the [act] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the [act]. . . . [Thus] [t]he burden of proving the applicability of an exception [to disclosure under the act] rests upon the party claiming it." (Internal quotation marks omitted.) *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, 274 Conn. 179, 187, 874 A.2d 785 (2005).

We begin by setting forth the standard of review.[7] "This court reviews the trial court's judgment pursuant to the . . . UAPA . . . . Under the UAPA, it is [not] the function . . . of this court to retry the case or to

substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Similarly], this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . Even if time-tested, we will defer to an agency's interpretation of a statute only if it is reasonable; that reasonableness is determined by [application of] our established rules of statutory construction. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The issue of statutory interpretation presented in this case is a question of law subject to plenary review."[8] (Citations omitted; internal quotation marks omitted.) *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 318 Conn. 769, 780–82, 122 A.3d 1217 (2015).

We begin with the text of § 10a-154a, which provides:

"Any record maintained or kept on file by a board of trustees of a constituent unit of the state system of higher education which is a *record of the performance and evaluation* of a faculty or professional staff member of such constituent unit shall not be deemed to be a public record and shall not be subject to disclosure under the provisions of section 1-210, unless such faculty or professional staff member consents in writing to the release of his records by the board of trustees of the constituent unit. Such consent shall be required for each request for a release of such records."[9] (Emphasis added.)

Resolution of Lieberman's claim depends on whether the phrase "record of the performance and evaluation of a faculty or professional staff member" as used in § 10a-154a encompasses records involving the resolution of a formal grievance filed against a faculty member. "Although [c]ourts are bound to accept the legislative definition of terms in a statute"; (internal quotation marks omitted) *Rose* v. *Freedom of Information Commission*, 221 Conn. 217, 225, 602 A.2d 1019 (1992); the phrase "record of the performance and evaluation" is not defined in § 10a-154a or elsewhere in title 10a of the General Statutes. "Accordingly, General Statutes § 1-1 (a) directs that we construe the term according to its commonly approved usage, mindful of any peculiar or technical meaning it may have assumed in the law. We may find evidence of such usage, and technical meaning, in dictionary definitions, as well as by reading the statutory language within the context of the broader legislative scheme." *State* v. *Menditto*, 315 Conn. 861, 866, 110 A.3d 410 (2015).

The term "evaluate" is defined with substantial similarity in numerous sources. Webster's Third New International Dictionary (2002) defines "evaluate" as, inter alia, "to examine and judge concerning the worth, quality, significance, amount, degree, or condition of . . . ." American Heritage College Dictionary (4th Ed. 2002) defines "evaluate" as, inter alia, "[t]o examine and judge carefully; appraise." Lastly, Merriam-Webster's Collegiate Dictionary (11th Ed. 2011) defines "evaluate," in relevant part, as "to determine the significance, worth, or condition of [usually] by careful appraisal and study . . . ." Although these definitions are helpful in understanding the term "evaluation," nothing in these definitions explains whether the term "evaluation" encompasses reports involving the resolution of a formal grievance.

Furthermore, we note that "[i]n interpreting a statute, [r]elated statutory provisions . . . often provide guidance in determining the meaning of a particular word . . . ." (Internal quotation marks omitted.) *Gilmore* v. *Pawn King, Inc.*, 313 Conn. 535, 555–56, 98 A.3d 808 (2014); see also General Statutes § 1-2z. In accordance with § 1-2z, we next turn to other related statutes for

guidance.

Section 10-151c, which was enacted in 1984; see Public Acts 1984, No. 84-276, § 1; protects the records of "performance and evaluation" of primary and secondary public school teachers from disclosure under the act.[10] Section 10-151c provides in relevant part: "Any records maintained or kept on file by the Department of Education or any local or regional board of education that are *records of teacher performance and evaluation* shall not be deemed to be public records and shall not be subject to the provisions of section 1-210, provided that any teacher may consent in writing to the release of such teacher's records by the department or a board of education. . . . *Notwithstanding any provision of the general statutes, records maintained or kept on file by the Department of Education or any local or regional board of education that are records of the personal misconduct of a teacher shall be deemed to be public records and shall be subject to disclosure pursuant to the provisions of subsection (a) of section 1-210.* Disclosure of such records of a teacher's personal misconduct shall not require the consent of the teacher. . . ." (Emphasis added.)

A review of § 10-151c demonstrates that it shares substantially similar language and structure to § 10a-154a. Specifically, both statutes contain an exemption from the general rule of disclosure under the act for records of "performance and evaluation."[11] Despite the fact that these statutes appear in different titles of the General Statutes, they address the same subject matter, namely, records of performance and evaluation of educators. Therefore, we believe that § 10-151c provides guidance in determining the meaning of the phrase "record of the performance and evaluation" as used in § 10a-154a.

Although § 10-151c is also silent on what constitutes a record of "performance and evaluation," it is part of a larger statutory scheme requiring evaluations of teachers. General Statutes § 10-151b (a) requires superintendents to evaluate teachers on an annual basis and provides in relevant part that "[a]n evaluation pursuant to this subsection shall include, but need not be limited to, strengths, areas needing improvement, strategies for improvement and multiple indicators of student academic growth. . . ."[12] This statutory language, which mandates performance evaluations and describes what the evaluations are to address, supports the conclusion that records of "performance and evaluation" would be a part of this formal process performed at the direction of a superintendent and not something raised by a colleague or another individual not mandated to conduct evaluations.

Our prior cases interpreting § 10-151c also support the conclusion that the phrase "records of teacher performance and evaluation" is narrow in scope and was

not intended to include any document that contains evaluative content pertaining to a teacher. In *Kelley* v. *Bonney*, 221 Conn. 549, 578–79, 606 A.2d 693 (1992), this court concluded that a verified petition and complaint, which contained "the allegations by students, parents and community members concerning the plaintiff's conduct that were submitted to the [S]tate [B]oard of [E]ducation pursuant to its regulations [did] not constitute 'records of teacher performance and evaluation' as contemplated by . . . § 10-151c." Furthermore, in *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 394–96, 604 A.2d 351 (1992), this court considered whether letters, portions of which concerned the plaintiff's performance as the school's football coach and portions of which concerned a violation of a Connecticut Interscholastic Athletic Conference regulation, were exempt from disclosure pursuant to § 10-151c. The plaintiff in *Ottochian* claimed "that when any evaluative information pertaining to a teacher appears in a document, the entire document is a 'record' for purposes of § 10-151c, and, therefore, is exempt from disclosure." Id., 397. This court disagreed with the plaintiff and upheld as reasonable the commission's determination that a document was not exempt from disclosure in its entirety pursuant to § 10-151c where portions of that document concerned matters of teacher performance and evaluation and other portions concerned nonevaluative content. Id., 400. Our review of related statutory provisions and this court's prior judicial interpretations of the phrase "performance and evaluation" in the context of § 10-151c indicates that "a record of the performance and evaluation" in § 10a-154a should not be interpreted to include any document that has any evaluative content at all, but is more limited in scope.

Nevertheless, a review of § 10-151c demonstrates that it contains explicit limiting language providing that records of personal misconduct are not to be included in the definition of "records of teacher performance and evaluation . . . ."[13] Section 10a-154a contains no similar language explicitly limiting the scope of records of performance and evaluation. Lieberman asserts that the absence of similar language explicitly limiting the application of § 10a-154a sufficiently distinguishes § 10-151c so as to make prior judicial interpretations of the latter irrelevant to the present case. Specifically, Lieberman asserts that the fact that the legislature did not amend § 10a-154a to add an exception for records of "personal misconduct," as it did in the case of § 10-151c, and the fact that § 10a-154a does not expressly limit its scope to formal faculty and staff evaluations, demonstrate that any reports containing evaluative information constitute a "record of the performance and evaluation" within the meaning of § 10a-154a. In response, Aronow and the commission assert that the legislature's failure to include such limiting language in § 10a-154a is not determinative because the "personal

misconduct" language was added merely as a clarification to § 10-151c, not to change the statute. We conclude that both of these interpretations of § 10a-154a are reasonable, and that, therefore, the statute is ambiguous. Accordingly, we look to extratextual sources for further guidance.

First, we examine the legislative history and the circumstances surrounding the enactment of § 10a-154a. The legislative history of No. 89-229, § 1, of the 1989 Public Acts, which enacted § 10a-154a, makes clear that its primary purpose was to "clarif[y] that the current exemption in the [act] for personnel records includes performance evaluations."[14] 32 H.R. Proc., Pt. 14, 1989 Sess., p. 4619, remarks of Representative Robert Godfrey. Section 10a-154a was enacted in response to an attempt by student organizations at the University of Connecticut to obtain access to student evaluations of faculty performance. See 32 H.R. Proc., Pt. 17, 1989 Sess., pp. 5820–21, remarks of Representative Godfrey ("From the very beginning . . . performance evaluations have been exempt as personnel file material from [disclosures under the act] . . . . Interestingly enough, this issue has only re-arisen this year because of this request for particular information provided by students."); Conn. Joint Standing Committee Hearings, Education, Pt. 1, 1989 Sess., p. 127 (setting forth testimony of Mitchell Pearlman, then executive director and general counsel for commission).

Furthermore, the legislative history confirms that § 10a-154a was enacted to protect the official system of peer and student evaluations of faculty and professional staff performance in state institutions of higher education. Nothing in the legislative history suggests that the legislature intended to exempt from the requirements of disclosure under the act records involving the resolution of a formal grievance filed against a faculty member. Rather, as Aronow and the commission assert, the legislative debate in the House of Representatives reflected a tension about whether officially collected evaluations of university faculty performance, particularly student evaluations, required the same level of confidentiality as records of teacher performance and evaluation at the primary and secondary school level.[15] See 32 H.R. Proc., Pt. 17, 1989 Sess., pp. 5818–22, remarks of Representative Mae Schmidle and Representative Godfrey. A similar discussion occurred in the Senate. Senator Philip Robertson, speaking in opposition to the bill, stated as follows: "There is a difference between elementary and secondary school teachers and constituent units of higher education professors. . . . If there is someone who is known by students, by faculty members, by administrative staff members that they are not competent or not quite as competent to teach a certain course, why should I be deprived of that knowledge? It's my money that is being used to pay that person's salary as a [s]tate taxpayer." 32 S. Proc.,

Pt. 7, 1989 Sess., pp. 2428–29. Moreover, at the public hearing held prior to passage of the bill, David Newton, the vice president for personnel for Connecticut State University, stated: "What I feel this particular bill protects is the right for [a university's] official evaluation system which may include samplings of student data as well as data taken from colleagues and other sources to be shielded from the public view. In the absence of that, we face a prospect of having evaluations so dilute[d] and so qualified in content that they will be useless to the process and useless to us who participate in the administration of the state university system." Conn. Joint Standing Committee Hearings, supra, p. 126.

Lieberman contends that legislative history demonstrates that, unlike § 10-151c, the scope of § 10a-154a is not limited to official performance evaluations and applies to "*any* record of a faculty member or professional staff [member] which is also a record of performance or evaluation."[16] (Emphasis added.) In support of this assertion, Lieberman cites to portions of the legislative history of § 10a-154a that merely recite the following, now codified, language: "Any record maintained or kept on file by a board of trustees of a constituent unit of the state system of higher education . . . ." General Statutes § 10a-154a; see 32 S. Proc., supra, p. 2424, remarks of Senator Robertson. In so contending, however, Lieberman overlooks the nearly identical language contained in § 10-151c: "Any records maintained or kept on file by the Department of Education . . . ."

The legislative history demonstrates, as Aronow and the commission contend, that the legislature intended § 10a-154a to extend the same protections to state university faculty and professional staff members as § 10-151c granted to public primary and secondary school teachers. For example, speaking in opposition to Senator Robertson's proposed amendment to the bill, which would have required the disclosure of a record of performance and evaluation to constitute an invasion of privacy before qualifying for exemption,[17] Senator Kevin Sullivan stated that the proposed amendment was "fully inconsistent with what the [state] . . . already decided a long time ago with [respect to] individuals who are in every respect the equivalen[t] of higher education faculty and that is that we have exactly this provision now for teachers and professionals in our public, elementary and secondary schools." 32 S. Proc., supra, p. 2426. Senator Sullivan then urged rejection of the amendment, pointing out that "faculty in higher education and the quality of our higher education system deserve the same fairness, the same treatment, the same personnel process that we have provided for elementary and secondary school teachers and professionals." Id., p. 2428; see also Conn. Joint Standing Committee Hearings, supra, p. 127 (Pearlman testifying that "[s]everal years ago, a bill was passed that provided for the confidentiality of these records only with respect to . . .

local public school teachers below the rank of superintendent"); Conn. Joint Standing Committee Hearings, supra, p. 175 (testimony of Steve Thorton, staff organizer for Congress of Connecticut Community Colleges, indicating that language under consideration was "similar to and actually completes the work of a . . . legislative initiative, which . . . preserved the confidentiality of evaluations of public school teachers"). These comments in the legislative history of § 10a-154a support our understanding that, in passing § 10a-154a, the legislature intended to provide a very similar exemption from disclosure in § 10a-154a as in § 10-151c.

As explained previously in this opinion, this court has narrowly construed exemptions to disclosure under the act. See *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 187; see also footnote 19 of this opinion. For example, in *Kelley* v. *Bonney*, supra, 221 Conn. 578–79, this court applied a narrow construction of § 10-151c and held that certain documents filed with the State Board of Education, which contained allegations of a variety of different forms of teacher misconduct, did not constitute " 'records of teacher performance and evaluation' " as used in § 10-151c.[18] Similar to the documents at issue in *Kelley*, the reports at issue in the present case are the result of an investigation into allegations of workplace misconduct against Lieberman. Moreover, in *Ottochian* v. *Freedom of Information Commission*, supra, 221 Conn. 397, this court declined to adopt the plaintiff's interpretation of § 10-151c that all documents discussing teacher performance were exempt from disclosure pursuant to § 10-151c. In *Ottochian*, this court upheld as reasonable the commission's conclusion that letters, which not only concerned a high school's violations of state regulations governing high school football practice sessions, but also contained information about the plaintiff's performance as the high school football coach, were not exempt in their entirety under § 10-151c. Id., 395–400. In *Ottochian*, the commission, after concluding that the superintendent had failed to comply with its first order to redact only the portions of the letters that contained evaluative content, "designated a line-by-line order specifying those portions of the letters that the superintendent should redact." Id., 396.

Although Lieberman concedes that a record of personal misconduct may also contain an evaluation of an individual's performance, he invites this court to conclude that any record containing any form of evaluative content pertaining to a university faculty or professional staff member is protected from disclosure under § 10a-154a. We rejected the plaintiff's broad claim in *Ottochian*, and, for the foregoing reasons, we reject Lieberman's analogous claim that the legislature intended to exempt such a broad range of records from disclosure through § 10a-154a. See id., 397. As demon-

strated by *Ottochian*, we further note the burdensome nature of imposing a requirement that custodians of documents redact any form of evaluative content from all documents pertaining to faculty or professional staff members. See id., 396.

Lieberman claims that the analysis of § 10-151c in *Wiese* v. *Freedom of Information Commission*, supra, 82 Conn. App. 604, is inapplicable to the present case because the disclosure of the documents at issue in *Wiese* was specifically authorized by the language in § 10-151c requiring the disclosure of records of the personal misconduct of a teacher and § 10a-154a does not contain similar language.[19] In support of his claim, Lieberman accurately points out that the provisions of § 10a-154a were not changed to reflect the exception for records of personal misconduct to the exemption set forth in § 10-151c, as amended by No. 02-138, § 20, of the 2002 Public Acts (P.A. 02-138). In response, Aronow and the commission, citing *Wiese*, contend that the amendment to § 10-151c, which expressly excluded records of personal misconduct from the exemption to disclosure set forth in § 10-151c, only codified the original intent of § 10-151c so as to clarify that records of teacher misconduct were never intended to be within the scope of the phrase " 'teacher performance and evaluation.' " We agree with Aronow and the commission.

The plaintiff in *Wiese*, a high school teacher, showed a film entitled " 'Damned in the USA' " to his American government class. *Wiese* v. *Freedom of Information Commission*, supra, 82 Conn. App. 606. Upon learning that the plaintiff had shown the film, his supervisors investigated the matter and deemed the film to be age inappropriate. Id. As a result of the investigation, the superintendent, a teacher's union representative, and the plaintiff signed a " 'last chance agreement,' " which "detailed the superintendent's findings of fact, the punishment involved and penalties for future infractions." Id. Subsequently, the defendants, a newspaper and reporter, requested that the school provide them with the agreement and the plaintiff objected to the request, claiming that the agreement fell within the exemption to the general rule of disclosure contained in § 10-151c. Id., 606–607. The defendants then appealed to the commission. Id., 607. In *Wiese*, the commission found that the agreement was not a record of " 'teacher performance and evaluation' " within the meaning of § 10-151c and ordered that it be disclosed. Id., 608. The Appellate Court upheld the judgment of the trial court affirming the commission's order of disclosure. Id., 611–12. Recognizing that the "case highlights the uncharted waters between what information constitutes a record of teacher misconduct, meriting discipline, and what information constitutes a record of teacher performance in the classroom setting, meriting an evaluation of that performance," the Appellate Court reasoned that

"[a]n activity may be related collaterally to teaching but nevertheless merit discipline . . . . This is such a case. In the judgment of the superintendent in this case, the plaintiff's conduct, showing an age inappropriate film, merited discipline. The agreement describes that judgment and the need for discipline." (Citation omitted.) Id., 612.

The facts in *Wiese*, however, predated the passage of P.A. 02-138 and the court's analysis was based on the scope of the phrase "teacher performance and evaluation" and the original intent of § 10-151c as drafted before the amendment. See id., 610 n.6. Contrary to Lieberman's argument, the Appellate Court's decision in *Wiese* was not based on the "personal misconduct" language of P.A. 02-138, but was a logical extension of its prior holding in *Carpenter* v. *Freedom of Information Commission*, 59 Conn. App. 20, 755 A.2d 364, cert. denied, 254 Conn. 933, 761 A.2d 752 (2000). See *Wiese* v. *Freedom of Information Commission*, supra, 82 Conn. App. 612.

In *Carpenter*, which was decided two years before the passage of P.A. 02-138, the Appellate Court upheld as reasonable the commission's determination that "records 'relating to incidents in which school employees are alleged to have allowed, either inadvertently or intentionally, students to have access to pornography or sexually explicit material' " related only to the plaintiff's personal conduct and not the plaintiff's ability to teach and, therefore, were not exempt from disclosure as " 'records of teacher performance and evaluation' " under § 10-151c. *Carpenter* v. *Freedom of Information Commission*, supra, 59 Conn. App. 21–22. In *Carpenter* the Appellate Court concluded that such "[r]ecords of a teacher's personal misconduct occurring during class time, but unrelated to teaching . . . should not be protected from disclosure under § 10-151c." Id., 26. On the basis of the foregoing analysis, we agree with the trial court that interpretation of § 10a-154a should parallel the interpretation of § 10-151c because the Appellate Court, in examining the scope of the phrase "records of teacher performance and evaluation," had distinguished between records of personal misconduct and records of evaluation prior to the statutory amendment.

Lieberman further contends that because, unlike § 10-151c, § 10a-154a applies to both faculty and professional staff members and the phrase "performance and evaluation" is not modified by the term "teacher," § 10a-154a encompasses records involving the performance of any role a faculty or professional staff member fulfills, not merely records involving their teaching responsibilities. Thus, Lieberman claims that the reports fall within the scope of § 10a-154a because they concern, inter alia, Lieberman' performance in his capacity as chairman of the health center's orthopedic surgery department. We disagree. Instead, we conclude, as the Appellate Court

did in *Wiese*, that the reports in the present case concern conduct "collaterally" related to Lieberman's various positions at the health center. See *Wiese* v. *Freedom of Information Commission*, supra, 82 Conn. App. 612.

Lastly, we address Lieberman's assertion that the trial court erred in considering the primary purpose behind the creation of the reports, namely responding to a filed grievance, rather than limiting its analysis to the content of the reports. Aronow and the commission respond that the context in which a document is created is relevant to the inquiry of whether that document is protected from disclosure under § 10a-154a and that Lieberman's interpretation would be inconsistent with the overarching policy favoring disclosure under the act. We agree with Aronow and the commission.

In *Rose*, this court concluded that § 10-151c was not "intended to prevent the public disclosure of the substance of votes of a public agency that happen to concern matters of personnel, teacher performance or evaluation." *Rose* v. *Freedom of Information Commission*, supra, 221 Conn. 234. In *Rose*, the school superintendent recommended to a local board of education that it take disciplinary action against teachers and administrators who had "staged a mock arrest of a teacher as a prelude to teaching students about the Scopes Monkey Trial." Id., 219. The local board of education discussed the incident and the recommended disciplinary action in executive session, but then reconvened in public and voted to accept the superintendent's recommendations for disciplinary action, without disclosing the specific action on which it voted. Id., 220. This court, acknowledging that the legislature intended that § 10-151c serve as an extension of the statute governing the privacy of personnel files,[20] reasoned that "[w]hile it is quite possible that the vote of the [local board of education] to approve the superintendent's recommendation might generate disciplinary actions, such as the issuance of letters of reprimand, suspensions, or terminations, which in turn might produce records which would become part of the plaintiff's personnel files, the vote itself is not such a record." (Internal quotation marks omitted.) Id., 234. Therefore, this court concluded that the commission was "acting within the scope of its authority in ordering the [local board of education] to furnish the complainants 'with a record containing the recommendation for disciplinary action it approved.' " Id., 235.

While the present case does not raise the same concerns expressed in *Rose* about whether elected public officials are performing their duties properly, it involves a question similar to that presented in *Rose*. Similar to the vote to either approve or reject the superintendent's recommendations for discipline in *Rose*, the committee issued a report in response to the filing of Aronow's grievance and Austin drafted a report to respond to the

committee's recommendations. Like the local board of education's vote in *Rose*, the reports in the present case are not disciplinary records.

Furthermore, the parties conceded at oral argument before this court that the document initiating the grievance at issue in this appeal is subject to public disclosure. By withholding the reports from disclosure, a party who files a grievance pursuant to the specific grievance procedure at issue in the present case would solely be notified of the resolution of the grievance. Therefore, if we were to follow the position urged by Lieberman, a grievant would be required to exercise his right to appeal the outcome of a filed grievance without the benefit of knowing the rationale. Such an interpretation would unduly hinder the grievance process.

Conceivably almost all records relating to a faculty or professional staff member's employment could include some form of evaluative content. Thus, to adopt Lieberman's position would make the exception so broad that it would threaten to swallow the general rule of disclosure under the act, as it applies to university faculty and professional staff members. See *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, supra, 274 Conn. 187. Therefore, we reject Lieberman's broad construction of § 10a-154a and, instead, narrowly construe the exemption. See id.; see also footnote 19 of this opinion. Because our interpretation is consistent with our narrow interpretation of § 10-151c and with the policy framework of the act, we conclude that the reports in the present case do not constitute a "record of the performance and evaluation" of a state university faculty or professional staff member within the exemption created by § 10a-154a. Accordingly, we conclude that the trial court properly dismissed Lieberman's appeal.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 10a-154a provides: "Any record maintained or kept on file by a board of trustees of a constituent unit of the state system of higher education which is a record of the performance and evaluation of a faculty or professional staff member of such constituent unit shall not be deemed to be a public record and shall not be subject to disclosure under the provisions of section 1-210, unless such faculty or professional staff member consents in writing to the release of his records by the board of trustees of the constituent unit. Such consent shall be required for each request for a release of such records."

[2] All references to positions in this opinion pertain to those held at the time of the incident relevant to this appeal. We note that Lieberman has held various other positions, including faculty member at the University of Connecticut School of Medicine and director of the Musculoskeletal Institute at the health center.

[3] The health center's freedom of information officer, Scott Wetstone, was also named as a defendant in the underlying action. During the proceedings before the trial court, the health center and Wetstone declined to take a position on whether the reports at issue are exempt from disclosure under the act pursuant to § 10a-154a. These parties, instead, requested judicial guidance in interpreting the scope of the exemption to the act in § 10a-154a. We note that, although these parties declined to file appellate briefs on the

primary issue in the present case, they filed a joint supplemental brief on the issue of mootness in response to the order of this court dated April 1, 2015. See footnote 7 of this opinion. We also note that Aronow has, inter alia, adopted the arguments set forth in the commission's brief.

[4] We note that Lieberman was granted permission to intervene as a full party respondent by the commission. We further note that, although the University of Connecticut Health Center Chapter of the American Association of University Professors was granted permission to intervene as a full party complainant by the commission, it did not appear before the trial court and is not a party to the present appeal.

[5] General Statutes § 1-200 (5) provides in relevant part: " 'Public records or files' means any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency . . . whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

[6] Lieberman subsequently appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[7] All the parties to the appeal agree that the present question is not rendered moot by a discovery order issued in a collateral proceeding, which permitted limited disclosure of the reports to Aronow. Nonetheless, because mootness implicates this court's subject matter jurisdiction, we are required to address the issue.

The record discloses the following additional relevant facts, which are undisputed. On March 20, 2015, the commission notified this court that the health center had recently provided the reports to Aronow pursuant to a discovery order issued in a collateral proceeding before the Commission on Human Rights and Opportunities (CHRO). The health center made this disclosure subject to a confidentiality order and a requirement that the reports be returned at the conclusion of the CHRO proceeding. As a result, on April 1, 2015, this court ordered the parties "to file simultaneous supplemental briefs addressing the issue of whether this appeal is moot in light of the fact that the [reports] have been provided to [Aronow] pursuant to a discovery order issued [in the CHRO] proceeding."

The parties assert that a comparison of the limited nature of disclosure permitted under the protective order issued in the collateral CHRO proceeding and the unencumbered disclosure order of the commission demonstrates that the present appeal is not moot. In contrast to the restrictions on disclosure of the reports contained in the protective order issued by the CHRO, the final order of the commission does not contain any restrictions on further use or dissemination of the reports. The commission's order simply provides that the health center "shall forthwith provide [Aronow] with a copy of the [reports], free of charge." For the foregoing reasons, we agree with the parties and, accordingly, conclude that the appeal is not rendered moot.

[8] In the present case, the parties do not dispute that the commission's interpretation of this phrase has never been subject to judicial scrutiny nor does the commission contend that its interpretation is time-tested. Aronow and the commission do claim, however, that the commission's interpretation of the phrase "record of the performance and evaluation" in § 10a-154a should be entitled to some degree of deference because the commission has consistently applied a reasonable construction to similar language found in § 10-151c and the commission applied that same construction to § 10a-154a in the present case. In support of this claim, the commission cites to *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission*, 212 Conn. 100, 106, 561 A.2d 429 (1989), and *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 398—99, 604 A.2d 351 (1992). In the first of these two cases, this court upheld the commission's interpretation of the term "operational meeting" contained within a statute that, at the time, provided an exemption to the act's open meeting requirement for "[a]ny operational meeting of active members of a volunteer fire department . . . ." (Internal quotation marks omitted.) *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission*, supra, 102; see General Statutes (Rev. to 1989) § 7-314 (b). In doing so, this court explained that "[w]hen the legislature uses a broad term, such as 'operational meeting[s],' in an administrative context, without attempting to define that term, it evinces a legislative judgment that the agency should define the parameters of that term on a case-by-case basis." *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission*, supra, 106. In the second case,

we applied this conclusion in deferring to the commission's interpretation of the term "records" in § 10-151c. *Ottochian* v. *Freedom of Information Commission*, supra, 399. We note that both of these cases were decided long before the enactment of § 1-2z and that the present case involves an issue of statutory construction that has never been subject to judicial scrutiny and lacks a time-tested interpretation by the commission. See *Freedom of Information Officer, Dept. of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 318 Conn. 769, 781, 122 A.3d 1217 (2015). Accordingly, we follow the mandates of § 1-2z.

[9] The parties agree that the reports are records that were kept on file by a board of trustees of a constituent unit of the state system of higher education, and that Lieberman, a faculty member, has not consented to their disclosure.

[10] Section 10-151c defines " 'teacher' " as "each certified professional employee below the rank of superintendent employed by a board of education in a position requiring a certificate issued by the State Board of Education."

[11] We agree with the trial court that the phrase "a record of the performance and evaluation of a faculty or professional staff member" in § 10a-154a is analogous to the phrase "records of teacher performance and evaluation" in § 10-151c.

[12] We note that there is no such similar requirement in title 10a of the General Statutes.

[13] In 2002, the legislature amended § 10-151c by adding, inter alia, the following statutory language: "Notwithstanding any provision of the general statutes, records maintained or kept on file by any local or regional board of education which are records of the personal misconduct of a teacher shall be deemed to be public records and shall be subject to disclosure pursuant to the provisions of subsection (a) of section 1-210. . . ." Public Acts 2002, No. 02-138, § 20.

[14] Section § 1-210 (b) (2) exempts from the purview of the act "[p]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ." This court has previously stated that "the invasion of personal privacy exception of [§ 1-210 (b) (2)] precludes disclosure . . . only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." (Internal quotation marks omitted.) *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 662, 774 A.2d 957 (2001). At oral argument before this court, counsel for the commission suggested that the subject of a grievance might be able to raise § 1-210 (b) (2) as a ground for nondisclosure. Lieberman has not raised § 1-210 (b) (2) and, accordingly, we decline to address this issue in the present case.

[15] For example, Representative Mae Schmidle, opposing the bill, stated as follows: "[T]his bill . . . prevents students from gaining access to evaluations that the students themselves have provided for the faculty. Now I know that we have an exception to local public school teachers and a lot of people tend to agree with that. When you send a child to a local public school you don't have any option. You have nowhere else to send that particular child if you're going to be in the school system and there may be some rationale for preventing the evaluations of public school teachers from being public, but I don't see that this is the same situation and I don't see the necessity of doing this for university teachers. . . . If, for example, in a particular instance, you're not pleased with the performance of a faculty, you always have the option of going to another school or another university. That is not so with the public school children and I don't think that we can say that this is similar or exactly like the exception for public school children." 32 H.R. Proc., Pt. 17, 1989 Sess., pp. 5819–20. In response, Representative Godfrey explained that this bill was aimed at protecting administratively facilitated evaluations: "[T]here is an alternative method of providing or obtaining that information of student evaluation and it is by having the students do them themselves . . . . So it's not a question of hiding particular information that would otherwise be available to students or to potential students, but it simply says the university isn't going to be the facility by which this is performed." Id., p. 5821.

[16] Lieberman does not dispute that the legislative history of § 10-151c indicates that the legislature was concerned about protecting the confidentiality of official performance evaluations when it enacted § 10-151c.

[17] Senator Robertson's proposed amendment to the bill was defeated. 32 S. Proc., supra, p. 2431.

[18] The verified petition and complaint in *Kelley* contained the following

allegations: "(1) the plaintiff conveyed to students the belief that females are mentally and morally inferior to males; (2) he 'sexualized' his classroom presentations causing his students to feel anger, embarrassment and fright; (3) he failed to cover the curriculum material for his courses; (4) he failed to set a good example regarding patience, fairness, compassion, and respect for the rights of others without regard to race, sex, religion or nationality; (5) students were 'traumatized' by him; (6) he 'repeatedly [verbally] abused' students; (7) he committed rough and hurtful batteries on male students; and (8) he touched female students against their will." *Kelley* v. *Bonney*, supra, 221 Conn. 555–56.

[19] We note that Lieberman further claims that the court in *Wiese* erred in narrowly construing § 10-151c. Lieberman contends that the rule of narrow construction does not apply to §§ 10-151c and 10a-154a because these statutes provide that the records within their scope "shall not be deemed to be public records," rather than providing that the records are exempt from the general rule of disclosure under the act. This court has previously applied the rule of narrow construction to § 10-151c. See *Kelley* v. *Bonney*, supra, 221 Conn. 578–79; *Ottochian* v. *Freedom of Information Commission*, supra, 221 Conn. 398; *Rose* v. *Freedom of Information Commission*, supra, 221 Conn. 233. Accordingly, in light of our discussion of the notable similarities between these statutes subsequently in this opinion, we disagree with Lieberman and construe § 10-151c narrowly.

[20] At the time this court rendered its decision in *Rose*, the statutory language governing personnel files was set forth in General Statutes (Rev. to 1991) § 1-19 (b) (2). That language was transferred to § 1-210 (b) (2) in 1999. See *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 663 n.1, 774 A.2d 957 (2001); see also footnote 14 of this opinion.

--------------------------------